No. 24-60500

# In the United States Court of Appeals for the Fifth Circuit

---

STARBUCKS CORPORATION,
*Petitioner/Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,
*Respondent/Cross-Petitioner.*

---

*On Appeal from a Decision of the National Labor Relations Board,*
*No. 21-CA-304228*

---

## BRIEF OF PETITIONER/CROSS-RESPONDENT

---

JEFFREY S. HILLER
LITTLER MENDELSON, P.C.
  *41 S. High Street, Ste. 3250*
  *Columbus, OH 43215*

JONATHAN O. LEVINE
LITTLER MENDELSON, P.C.
  *1111 E. Kilbourn Avenue, Ste. 1000*
  *Milwaukee, WI 53202*

LISA S. BLATT
  *Counsel of Record*
AMY MASON SAHARIA
CLAIRE R. CAHILL
TYLER J. BECKER
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

# CERTIFICATE OF INTERESTED PERSONS

## Case No. 24-60500

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner/Cross-Respondent:**

- Starbucks Corporation

**Respondent/Cross-Petitioner:**

- National Labor Relations Board

**Intervenor:**

- Workers United, affiliated with the Service Employees International Union

**Counsel for Petitioner/Cross-Respondent:**

- Lisa S. Blatt
  Amy Mason Saharia
  Claire R. Cahill
  Tyler J. Becker
  Williams & Connolly LLP
  680 Maine Avenue, S.W.
  Washington, DC 20024
  (202) 434-5000
  lblatt@wc.com
  asaharia@wc.com
  ccahill@wc.com
  tbecker@wc.com

i

- Jeffrey S. Hiller
  Littler Mendelson, P.C.
  41 S. High St., Ste. 3250
  Columbus, OH 43215
  (614) 463-4230
  jhiller@littler.com

- Jonathan O. Levine
  Littler Mendelson, P.C.
  1111 E. Kilbourn Ave., Ste. 1000
  Milwaukee, WI 53202
  (414) 291-5537
  jlevine@littler.com

**Counsel for Respondent/Cross-Petitioner:**

- Ruth E. Burdick
  Kathleen McKinney
  Jared Odessky
  Milakshmi Varuni Rajapakse
  National Labor Relations Board
  1015 Half Street, SE
  Washington, DC 20570
  (202) 273-2960
  appellatecourt@nlrb.gov
  linda.dreeben@nlrb.gov
  jared.odessky@nlrb.gov
  milakshmi.rajapakse@nlrb.gov

**Counsel for Intervenor:**

- Elizabeth Anne Grdina
  Michael Paul Ellement
  Robert S. Giolito
  Charlotte Schwartz
  James & Hoffman, P.C.
  Suite 1050
  1629 K Street, N.W.

Washington, DC 20006
202-960-1651
bgrdina@jamhoff.com
mpellement@jamhoff.com
rgiolito@giolitolaw.com
chschwartz@jamhoff.com

Counsel further certifies that Starbucks Corporation has no parent company and that no public company owns 10% or more of its shares.

/s/ *Lisa S. Blatt*
LISA S. BLATT
*Attorney of Record for*
*Petitioner/Cross-Respondent*

iii

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner/Cross-Respondent Starbucks Corporation requests oral argument pursuant to Fifth Circuit Rule 28.2.3. In the decision under review, the National Labor Relations Board (NLRB) held that Starbucks committed an unfair labor practice when it used Board-authorized subpoenas to seek evidence supporting its defense in a Board proceeding. This case presents significant questions about the lawfulness of the standard that the Board adopted to hold Starbucks liable under the National Labor Relations Act (NLRA), which converts every subpoena revoked by the Board into an unfair labor practice. The case also raises questions about whether the Board's decision holding Starbucks liable for an unfair labor practice violated the APA. Oral argument will assist the Court in resolving these important issues.

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION .................................................................1
STATEMENT OF THE ISSUES ....................................................................1
INTRODUCTION............................................................................................2
STATEMENT OF THE CASE .......................................................................6
    A.    Legal Background......................................................................6
    B.    Factual History .........................................................................9
    C.    Administrative Proceedings ...................................................17
SUMMARY OF ARGUMENT.......................................................................21
STANDARD OF REVIEW ...........................................................................26
ARGUMENT .................................................................................................27
I.     THE BOARD VIOLATED THE APA AND THE NLRA BY
      ADOPTING *NATIONAL TELEPHONE*'S BALANCING
      TEST AS A LIABILITY STANDARD FOR UNFAIR LABOR
      PRACTICES. .......................................................................27
    A.    The Board's Failure to Explain Its Adoption of the
        *National Telephone* Balancing Test to Assess Employer
        Liability Under Section 8(a)(1) Violated the APA. .......................28
    B.    The Board's Adoption of the *National Telephone*
        Balancing Test to Assess Employer Liability Under
        Section 8(a)(1) Violated the NLRA. ...............................37
II.    THE BOARD'S DECISION THAT STARBUCKS
      COMMITTED AN UNFAIR LABOR PRACTICE WAS
      ARBITRARY AND CAPRICIOUS AND LACKED
      SUBSTANTIAL EVIDENCE...............................................43
    A.    The Board Failed to Identify or Balance Starbucks'
        Interests When Purporting to Apply *National Telephone*'s
        Balancing Test. ...............................................45
    B.    The Board Failed to Consider Relevant Factors and
        Disregarded Key Evidence When Determining that
        Starbucks' Subpoena Requests Were Coercive. ...........................49
CONCLUSION................................................................................................60

# TABLE OF AUTHORITIES

Page

## CASES

*ABM Onsite Servs.-W., Inc. v. NLRB*, 849 F.3d 1137 (D.C. Cir. 2017) ..........36

*Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359 (1998)....26, 27, 48

*Apache Corp. v. FERC*, 627 F.3d 1220 (D.C. Cir. 2010) ........................43, 45, 49

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002)........................................40, 42

*Beta Steel Corp.*, 326 NLRB 1267 (1998) ............................................................7

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983) .....................42

*Bourne v. NLRB*, 332 F.2d 47 (2d Cir. 1964) (per curiam)...............................55

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) .............41

*Century Rest. & Buffet, Inc.*, 358 NLRB 143 (2012) .........................................36

*Circus Circus Casinos, Inc. v. NLRB*,
    961 F.3d 469 (D.C. Cir. 2020).........................................................26, 28, 34, 36

*Comm. on Masonic Homes v. NLRB*, 556 F.2d 214 (3d Cir. 1977) ................57

*Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926) ...........................................39

*Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727 (D.C. Cir. 1983)...................4

*ExxonMobil Rsch. & Eng'g Co., Inc. v. NLRB*,
    --- F.4th ----, 2025 WL 782692 (5th Cir. Mar. 12, 2025) ...............................26

*FCC v. Cruz*, 596 U.S. 289 (2022) ......................................................................28

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .........................28, 34

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ......................39

*Freeman v. Lasky, Hass & Cohler*, 410 F.3d 1180 (9th Cir. 2005) .................41

*Guess? Inc.*, 339 NLRB 432 (2003) ....................................................................18

*Hudson Inst. of Process Rsch. Inc. v. NLRB*,
    117 F.4th 692 (5th Cir. 2024) ........................................................27, 28, 37

*In re Burlington N., Inc.*, 822 F.2d 518 (5th Cir. 1987) ....................................41

*In re Dilling Mech. Contractors, Inc.*, 357 NLRB 544 (2011).........................36

*In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707 (5th Cir. 2018) ........................27

*Interstate Power Tools & Machining Inc.*,
    2025 WL 32471 (NLRB Jan. 3, 2025) ................................................................53

*J.P. Stevens & Co. v. NLRB*, 638 F.2d 676 (4th Cir. 1980) ..............................58

*Lion Elastomers, LLC v. NLRB*, 108 F.4th 252 (5th Cir. 2024) ......................34

*Logmet, LLC*, 2021 WL 1814994 (NLRB Apr. 26, 2021)....................................8

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ............................26, 28

*Macy's, Inc. v. NLRB*, 824 F.3d 557 (5th Cir. 2016)...........................................1

Page

Cases—continued:

*Manor Care*, 356 NLRB 202 (2010) ..................................................................35

*McDonald's USA, LLC*, 363 NLRB 1362 (2016) ...........................................35, 46

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ..............................................................................44, 56

*Nat'l Tel. Directory Corp.*, 319 NLRB 420 (1995) ....................................*passim*

*NLRB v. Beretta USA Corp.*, 943 F.2d 49 (4th Cir. 1991) ...............................58

*NLRB v. Brookwood Furniture*, 701 F.2d 452 (5th Cir. 1983) .......................54

*NLRB v. Capitol Fish Co.*, 294 F.2d 868 (5th Cir. 1961) ..............................9, 46

*NLRB v. Guild Indus. Mfg. Corp.*, 321 F.2d 108 (5th Cir. 1963) .....................59

*NLRB v. Magna Corp.*, 734 F.2d 1057 (5th Cir. 1984) .....................................45

*NLRB v. McCullough Env't Servs., Inc.*, 5 F.3d 923 (5th Cir. 1993) ........54, 55

*NLRB v. Pneu Elec., Inc.*, 309 F.3d 843 (5th Cir. 2002) ................25, 26, 44, 54

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ..............................58

*NLRB v. Schill Steel Prods., Inc.*, 408 F.2d 803 (5th Cir. 1969) .....................56

*Ozark Auto. Distribs., Inc. v. NLRB*,
    779 F.3d 576 (D.C. Cir. 2015)...........................35, 45, 46, 47, 48

*Poly-Am., Inc. v. NLRB*, 260 F.3d 465 (5th Cir. 2001) ....................................59

*Renew Home Health v. NLRB*, 95 F.4th 231 (5th Cir. 2024) ..............27, 43, 50

*Rossmore House*, 269 NLRB 1176 (1984)..........................................................59

*Santa Barbara News-Press*, 358 NLRB 1539 (2012) ...........................19, 50, 53

*Santa Barbara News-Press*, 361 NLRB 903 (2014) ....................................19, 50

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ................................40, 41

*Starbucks Corp.*, 2023 WL 3478197 (NLRB May 12, 2023)..............................18

*Starbucks Corp.*, 372 NLRB No. 159 (Nov. 28, 2023)..............................*passim*

*Tesla, Inc.*, 370 NLRB No. 101 (Mar. 25, 2021) ..............................................36

*Tracy Auto, L.P.*, 372 NLRB No. 101 (July 6, 2023).......................18, 53, 54, 55

*Trump Ruffin Com. LLC*, 2016 WL 4036983 (NLRB July 28, 2016)........32, 34

*Venetian Casino Resort, LLC, v. NLRB*, 793 F.3d 85 (D.C. Cir. 2015)....40, 42

*Veritas Health Servs., Inc.*, 362 NLRB 283 (2015)..........................................36

*Wright Elec., Inc.*, 327 NLRB 1194 (1999) ......................................................18

## CONSTITUTION, STATUTES, AND REGULATIONS

U.S. Const. amend. I................................................................................*passim*

5 U.S.C. § 706 ...................................................................................................36

Page

Constitution, Statutes, and Regulations—continued:

29 U.S.C.

    § 153......................................................................................7

    § 157......................................................................................6

    § 158.............................................................................*passim*

    § 160.................................................................................1, 7

29 C.F.R.

    § 102.9....................................................................................7

    § 102.10..................................................................................7

    § 102.15..................................................................................7

    § 102.31..........................................................................*passim*

    § 102.34..................................................................................7

    § 102.118..........................................................8, 9, 13, 55, 56

## OTHER AUTHORITIES

NLRB, *Casehandling Manual, Part 1, Unfair Labor Practice Proceedings* (2025), https://tinyurl.com/yc3mjtdz ........................................7

NLRB, Guide to Board Procedures (2023), https://tinyurl.com/3rup8tht ........8

8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2168 (3d ed. 2024)........................................................52

## STATEMENT OF JURISDICTION

The National Labor Relations Board (NLRB) had jurisdiction over this unfair labor practice proceeding under 29 U.S.C. § 160(b).  This Court has jurisdiction over Starbucks' petition for review and the Board's cross-application for enforcement under 29 U.S.C. § 160(e)-(f) because Starbucks "transacts business" in this Circuit.  *See Macy's, Inc. v. NLRB*, 824 F.3d 557, 561 n.1 (5th Cir. 2016) (citation omitted).

## STATEMENT OF THE ISSUES

1.  Whether the Board violated the APA and the NLRA, and infringed on the First Amendment right to petition when, without explanation, the Board adopted *National Telephone*'s balancing test to hold that Starbucks committed an unfair labor practice under Section 8(a)(1) of the NLRA by issuing subpoenas to employees to collect evidence during a Board proceeding.

2.  Whether the Board violated the APA by holding Starbucks liable under Section 8(a)(1) when the Board (a) identified but failed to apply *National Telephone* as the test for liability, and (b) lacked substantial evidence

1

and failed to assess whether Starbucks' subpoenas coerced employees when considered in the totality of the circumstances.

## INTRODUCTION

The NLRB's rules allow employers facing unfair labor practice charges to issue subpoenas that seek testimony and evidence relevant to their defense. But in a catch-22, under a new rule adopted by the Board in this case, employers that use the Board's authorized discovery procedures to try to obtain evidence exonerating themselves from one unfair labor practice proceeding invite liability for a *new* unfair labor practice.

That is exactly what happened to Starbucks in this case. A union, Workers United, alleged that the general manager of Starbucks' store in La Quinta, California, committed unfair labor practices by telling employees not to discuss unionization on company time and by sharing management's opinions about the union during paid time. To prepare its defense before the administrative hearing, Starbucks issued subpoenas in accordance with the Board's rules to two employee witnesses requesting documents that Starbucks believed would undermine the charges. The administrative law judge (ALJ) revoked the subpoenas, in part because, in his opinion, the witnesses' pre-hearing confidentiality interests outweighed Starbucks' need for the relevant

2

requested information.  Later, during the administrative hearing, Starbucks successfully renewed one of its requests, obtained the documents, and used those documents to discredit the employee witnesses' testimony.  The ALJ ultimately dismissed all charges against Starbucks in that proceeding.

Perhaps foreseeing that it would lose the La Quinta store proceeding, Workers United filed a new charge while that proceeding was still pending. This time, Workers United claimed that Starbucks, by exercising its right to prepare a defense, had committed a new "unfair labor practice" under the NLRA merely by issuing subpoenas to two employees.

The ALJ and the Board bought the Union's argument, but not based on a finding that Starbucks actually "interfere[d] with, restrain[ed], or coerce[d]" its employees' exercise of employee rights under the NLRA.  *See* 29 U.S.C. § 158(a)(1).  Instead, the Board co-opted a subjective balancing test that it has previously used to resolve discovery disputes and transformed it into a liability standard for an unfair labor practice.  In the discovery context, that test requires an ALJ to revoke an employer's subpoenas whenever the ALJ believes that an employee's confidentiality interest outweighs the employer's need for the information.

3

Under the decision below, an employer that guesses incorrectly in one proceeding that an ALJ will resolve that balancing test in the employer's favor is automatically liable for an unfair labor practice in a second proceeding. In other words, the Board transformed every revoked subpoena into an unfair labor practice. Worse, the Board adopted this new standard without acknowledging that it was confusing a discovery test with a liability standard, without explaining its rationale for adopting a new standard, and without justifying how the test is consistent with the NLRA's text.

Under the Board's decision, employers are now faced with a no-win scenario whenever charged with an unfair labor practice: either forgo discovery in Board proceedings, or seek the discovery allowed by the Board's rules and risk automatic liability for a new unfair labor practice. That choice is "repugnant to notions of fairness" as it essentially greenlights the Board to "seek sanctions for alleged wrongdoing while withholding from the proceeding evidence that would demonstrate innocence." *Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 733 (D.C. Cir. 1983) (Scalia, J.). As Starbucks learned, if this decision stands, then even carefully drawn discovery requests that explicitly *avoid* interfering with employees' rights will not save employers from this catch-22.

4

This Court has ample reasons to grant Starbucks' petition for review and deny the Board's cross-petition for enforcement. In holding Starbucks liable for an unfair labor practice merely by issuing subpoenas to witnesses, the Board violated core principles of administrative law, the First Amendment, and the text of the NLRA.

*First*, the Board failed to explain its reasoning for converting an established test for obtaining evidence in Board proceedings into a liability standard defining an "unfair labor practice," in violation of the APA.

*Second*, the balancing test the Board adopted bears no relationship to the statutory liability standard in the NLRA's text and infringes employers' First Amendment right to petition the Board.

*Third*, even if the Board explained the balancing test it adopted and even if that test were consistent with the NLRA, the Board never actually balanced the parties' interests in the requested documents. Instead, it made a blanket proclamation that Starbucks' employees could be chilled by Starbucks' subpoenas, without giving any consideration at all to Starbucks' interests in presenting relevant evidence in its defense.

And, *fourth*, the Board ignored relevant factors and did not support its liability conclusion with substantial evidence. Most conspicuously, the Board

found that Starbucks improperly requested confidential witness affidavits even though Starbucks' subpoenas repeatedly emphasized it was not asking for any information considered confidential under the Board's rules and precedent. On the basis of that erroneous finding, the Board concluded that Starbucks' document request was "inherently coercive," regardless of the actual circumstances surrounding the request.

This Court should grant the petition for review and deny the Board's cross-application for enforcement.

## STATEMENT OF THE CASE

### A.     Legal Background

Section 7 of the NLRA guarantees employees the rights to unionize and to "engage in other concerted activities" for "mutual aid or protection." 29 U.S.C. § 157. Meanwhile, Section 8 of the NLRA reinforces those rights by barring employers from engaging in any "unfair labor practice." *Id.* § 158(a). As relevant here, an "unfair labor practice" includes employers' actions that "interfere with, restrain, or coerce employees in the exercise of [their Section 7] rights." *Id.* § 158(a)(1).

The NLRB enforces Section 8 by both prosecuting and adjudicating unfair labor practice charges. Its enforcement process starts when someone

6

(usually an employee or union) submits a charge to the NLRB's Regional Director (the head of a local NLRB office) complaining of an employer's unfair labor practice. *See* 29 C.F.R. §§ 102.9-.10. The Regional Director investigates charges and gathers evidence by taking confidential witness questionnaires, interviewing the charging parties, and preparing witness affidavits. *See* NLRB, *Casehandling Manual, Part 1, Unfair Labor Practice Proceedings* (2025), at 10050-54, https://tinyurl.com/yc3mjtdz ("Casehandling Manual"). If the General Counsel finds sufficient support for the charge, he or she authorizes the Regional Director to issue a complaint. *See* 29 U.S.C. §§ 153(d), 160(b); 29 C.F.R. § 102.15. Complaints provide a skeletal outline of the charged unfair labor practice, but often lack detailed allegations to permit the employer to prepare its defenses in detail. *See* 29 C.F.R. § 102.15; Casehandling Manual, at 10263-64. The matter then goes before an ALJ for adjudication, with the General Counsel in the prosecutor role. 29 U.S.C. § 153(d); 29 C.F.R. § 102.34.

Despite the adjudicative nature of NLRB proceedings, the NLRB provides few opportunities for employers to prepare a defense before an administrative hearing. Under the Board's "longstanding rules," employers are "not entitled to prehearing discovery" from the Board. *Beta Steel Corp.*,

326 NLRB 1267, 1267 n.3 (1998).  As a result, while the Board has extensive opportunity to build a case against employers during its investigation, employers must rely on a handful of evidence-gathering tools to try to anticipate the General Counsel's case against them and prepare a defense.

Subpoenas are one tool available to employers before their administrative hearings.  The Board's rules allow employers to ask the Regional Director to issue subpoenas "requiring the attendance and testimony of witnesses" at ALJ hearings and "the production of any evidence, including books, records, correspondence, electronic data, or documents, in their possession or under their control."  29 C.F.R. § 102.31(a); NLRB, Guide to Board Procedures, § 5.3(b) (2023), https://tinyurl.com/3rup8tht.

But employers do not always obtain documents they request in subpoenas.  Board employees are instructed to move to revoke subpoenas that request "files, documents, reports, memoranda, or records of the Board or of the General Counsel" like witness affidavits or other investigative files unless the Board consents in writing to the request. 29 C.F.R. § 102.118(a).  And the Board "does not permit parties to circumvent this rule by subpoenaing material from a party that it could not obtain from the General Counsel." *Logmet, LLC*, 2021 WL 1814994, at *1 (NLRB Apr. 26, 2021).  As this Court

8

has observed, the Board's rules present "an anomaly in our system of justice" where the General Counsel—the "agency official charged with responsibility" for ensuring the confidentiality of Board documents—is "also the prosecutor whose successful prosecution of [a] case could depend on exclusion of the evidence" sought. *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 876 (5th Cir. 1961). ALJs also will revoke employers' subpoenas if "in their opinion the evidence whose production is required does not relate to any matter" that is "in question in the proceedings," or the subpoenas do "not describe with sufficient particularity the evidence," or "for any other reason sufficient in law" the subpoenas are "otherwise invalid." 29 C.F.R. § 102.31(b).

Employers' latitude to elicit evidence in the administrative hearings is not much better. For example, witness affidavits that the Board generally holds in confidence before an unfair labor practice hearing are only released to employers during the hearing itself, if the witness testifies and the employer requests a copy of the affidavit to read (but not copy) before starting its cross-examination. *Id.* § 102.118(e).

### B.    Factual History

Starbucks is America's largest coffee purveyor and employs some 235,000 people in the United States alone. Starbucks recognizes the

significant value that its employees bring to its business and refers to its employees as "partners" because each has an ownership stake in the success of the business. Starbucks of course also respects its partners' right to organize under the NLRA. And it takes seriously its responsibility both to investigate allegations of unfair labor practices in its stores and to clear the names of partners who are wrongly accused of interfering with other partners' organizational rights.

This case stems from an earlier, different NLRB unfair labor practice proceeding. In December 2021, partners at the Jefferson Street Starbucks store in La Quinta, California, began a union organizing campaign. ROA.29. Shift supervisors Andrea Hernandez and Jazmine Cardenas joined the union organizing committee and openly supported unionization by wearing union pins on their work aprons. ROA.30-31, 55; *Starbucks Corp.*, 372 NLRB No. 159, slip op. at 2 (Nov. 28, 2023). Workers United ultimately won the election for certification as the bargaining representative for the Jefferson Street store. *See* 372 NLRB No. 159, slip op. at 1 n.1.

The same day as the union election, the Union filed charges with the NLRB against Starbucks, alleging that the Jefferson Street store's manager, Matt Burton, had told partners that they could not talk about the union while

on the clock or discuss unionization with other stores' partners.  ROA.287; *see* 372 NLRB No. 159, slip op. at 2 n.12.  The Union later added charges that Burton had held "unlawful antiunion 'captive audience' meeting[s]" with partners during which he informed them (without asking permission) of the downsides to unionization during "performance and development conversation[s]." *Starbucks*, 372 NLRB No. 159, slip op. at 1-2.

After investigating, the Regional Director issued a complaint charging Starbucks with violating NLRA Section 8(a)(1).  ROA.287-91.  Unbeknownst to Starbucks, Hernandez and Cardenas provided affidavits to the General Counsel during the investigation supporting the complaint and planned to testify at the administrative hearing.  ROA.103; Record Excerpts (RE) 8-9.

What Starbucks learned, though, was that during the union campaign Hernandez kept a small booklet in her work apron pocket where she jotted notes about her conversations with Burton and other things she saw occur at the store.  ROA.45.  The Union had told her to "document everything." ROA.45.  Starbucks also discovered that Hernandez may have secretly recorded her conversations with Burton since she had openly discussed the recordings with Cardenas within earshot of other partners.  ROA.403. Because the General Counsel's charges centered on Burton's conversations

11

with Jefferson Street partners about unionization, Starbucks believed that Hernandez's notes, recordings, and related records may contain relevant evidence to help defend against the unfair labor practice charges. ROA.403. Anything that Hernandez had communicated to Cardenas or others, including information about her journaling or recording practices, would also prove relevant and lead to other potentially relevant evidence. ROA.403, 409-10.

In September 2022—about a month before the scheduled administrative hearing—Starbucks served subpoenas duces tecum on Hernandez and Cardenas, requesting fourteen categories of documents that Starbucks believed would provide relevant evidence for its defense. ROA.256-84. Each subpoena included instructions clarifying in bold lettering that Starbucks was not asking Hernandez or Cardenas to turn over protected Board documents. Specifically, the instructions excluded confidential Board witness questionnaires, witness affidavits, or investigatory statements in its definition of "Documents":

> **"You are not being asked to provide, and excluded from the definition of 'Documents,' are the following categories contained in the NLRB Case handling Manual, Part 1, Unfair Labor Practice Proceedings: Confidential Witness Questionnaires as described at 10052.4; Confidential Witness Affidavits as described at 10060; and Statements (further defined in paragraph 2 below) provided to the NLRB where**

12

> **Assurance of Confidentiality have been given as described at
> 10060.5.** This definition is hereby incorporated into all requests
> below.**"**

ROA.261-62, 276-77 (emphasis in original). A similar instruction appeared in

the subpoenas' definition of "Statements":

> **You are not being asked to provide any such Statements in
> response to this Subpoena, and excluded from the definition of
> Statements above are any Statements as described herein and
> in the Board's Rules and Regulations at § 102.118 (e) and (g).**
> This definition is hereby incorporated into all requests below.

ROA.262, 277 (emphasis in original). Same with the definition of

"Communications":

> **You are not being asked to provide, and excluded from the
> definition of Communications, are the following categories
> contained in the NLRB Case handling Manual, Part 1, Unfair
> Labor Practice Proceedings: Confidential Witness
> Questionnaires as described at 10052.4; Confidential Witness
> Affidavits as described at 10060; Statements provided to the
> NLRB where Assurance of Confidentiality have been given as
> described at 10060.5; and Statements as described herein and
> in the Board's Rules and Regulations at § 102.118 (e) and (g).**
> This definition is hereby incorporated into all requests below.

*See* ROA.263-64, 278-79 (emphasis in original). In other words, when

Starbucks' subpoenas requested "statements, declarations, or affidavits" from

Hernandez and Cardenas, they expressly excluded confidential Board

documents or communications from those requests. *See* ROA.268, 283. And,

to further underscore Starbucks' disinterest in its partners' confidential union-

related information, Starbucks concluded its subpoena instructions with the

following:

> To ensure that the requests that follow are not construed to have
> the purpose or effect of interfering with, restraining or coercing
> employees in the exercise of their rights under Section 7 of the
> National Labor Relations Act, please redact the name of any
> Starbucks hourly employee, or information from which the·
> identity of any Starbucks hourly employee could be discerned,
> from any document responsive to the requests where failing to do
> so would result in disclosure of the employee's sentiments toward
> the Union (excluding [Hernandez and Cardenas]).

ROA.267, 282.

The General Counsel sought to revoke the subpoenas, arguing that the

subpoenas were overbroad and requested irrelevant or protected documents.

ROA.296-305; *see* 29 C.F.R. § 102.31(b).  While Starbucks defended the scope

of its subpoenas, ROA.403, it also offered to narrow the requests or to consent

to the ALJ's reviewing the requested documents *in camera* to determine

which documents Starbucks was entitled to, ROA.411.

Starbucks did not receive any of the requested documents before the

hearing.  On October 7, 2022, ALJ Wedekind granted the General Counsel's

petition to revoke in a one-page order.  ROA.414.  The ALJ agreed with the

General Counsel that the subpoenas were overbroad and requested some

information that was "not reasonably relevant" to the allegations (although the

14

ALJ did not specify which requested evidence was irrelevant). ROA.414. The ALJ observed that the subpoenas also requested relevant evidence but determined that Starbucks was "not entitled to subpoena that information" either because the documents were protected from pretrial discovery under the Board's rules or "because the information would reveal protected conduct or communications by the two employees and other employees." ROA.414. The ALJ did not explain how Starbucks' subpoenas requested documents "protected … under the Board's rules," when the subpoena instructions specifically excluded those documents. ROA.414; *see supra* pp. 12-14.

The ALJ recognized, however, that Starbucks may eventually be entitled to some of the subpoenaed documents. ROA.414. The ALJ thus denied Starbucks' request for Hernandez's notes or journal entries without prejudice to allow Starbucks to renew its request for the documents once Hernandez and Cardenas testified on direct examination during the administrative hearing.[1]  ROA.414.  The ALJ noted that Starbucks could

---

[1] The ALJ denied Starbucks' request for Hernandez's audio recording, not because the request was irrelevant or unreasonable, but because Starbucks had argued that the recordings "violated both its own employment policies and California's all-party consent law." *Starbucks Corp.*, 372 NLRB No. 159, slip op. at 2 n.23 (Nov. 28, 2023). According to the ALJ, the need for the recordings was outweighed by the "potential harm to Hernandez and the Board's

renew its request for Hernandez's and Cardenas's witness affidavits ("*Jencks* statements") at the hearing too. ROA.414 n.3.

A few days later, at Starbucks' administrative hearing, both Hernandez and Cardenas testified on direct examination. 372 NLRB No. 159, slip op. at 2 n.8. Starbucks then requested and received relevant entries from Hernandez's journal and Hernandez's and Cardenas's *Jencks* statements, which was among the critical evidence that doomed the General Counsel's case. *Id.* at 2 n.23.

On December 6, 2022, the ALJ dismissed all charges against Starbucks, largely based on findings that Hernandez's and Cardenas's testimony was not credible. *See id.* at 2. Hernandez's journal entries were vital to discrediting her testimony. Hernandez testified that in a meeting with Burton, she had asked whether employees were allowed to talk about the union, and Burton had said "only if it's on a break or they were clocked out." *Id.* But "nowhere in [Hernandez's] two and a half pages of handwritten notes" was there "any

processes" since Hernandez "was not represented by counsel at the hearing to advise her regarding her legal rights" and the "existence of such a recording would necessarily implicate [Hernandez] and potentially subject her to both disciplinary and legal sanctions." *Id.*

mention of her question or Burton's alleged response." *Id.* The ALJ observed that "given that the Union told [Hernandez] to take notes, it seems likely that Hernandez would have made at least some type of notation regarding Burton's alleged 'no talking about the Union' statement, either during or right after the meeting, if he had indeed made that statement." *Id.* at 2 n.24.

The Board affirmed and dismissed the complaint. *See id.* at 1.

### C.    Administrative Proceedings

Incredibly, Starbucks' successful effort to absolve itself with relevant evidence in one unfair labor practice case became the sole basis for another charge and, ultimately, the unfair labor practice holding at issue in this case.

Rewind a few months. On September 27, 2022—two weeks after Starbucks sent subpoenas to Hernandez and Cardenas and ten days before the ALJ had even ruled on the petition to revoke—the Union filed another unfair labor practice charge against Starbucks (the complaint at issue in *this* case). ROA.191. The General Counsel filed a complaint, alleging that Starbucks' efforts to defend itself against the unfair labor practice hearing constituted a new unfair labor practice. Such charges have become a common tactic of the General Counsel to discourage employers' lawful attempts to secure critical evidence to defend themselves before the Board and even in

state and federal courts. *See, e.g., Tracy Auto, L.P.*, 372 NLRB No. 101 (July 6, 2023) (subpoenas in Board proceedings charged as unfair labor practice); *Guess?, Inc.*, 339 NLRB 432, 432 (2003) (deposition question in state court lawsuit charged as unfair labor practice); *Wright Elec., Inc.*, 327 NLRB 1194, 1195 (1999) (discovery request in state court lawsuit charged as unfair labor practice); *see also Starbucks Corp.*, 2023 WL 3478197 (NLRB May 12, 2023) ("The General Counsel and the Union are using *Guess?* not just as a shield to protect employee confidentiality interests, but as a sword to weaken the Respondent's [federal court] defense.").

As relevant here, the charge alleged that Starbucks' subpoenas seeking evidence in its first Board proceeding had "interfered with, restrained and coerced" Hernandez's and Cardenas's exercise of their Section 7 right simply by requesting "information and communications concerning their protected and concerted activities, and/or union activities." ROA.191. The Regional Director issued a complaint, and the matter went before ALJ Tracy for a hearing on May 23, 2023. ROA.2, 207.

On November 2, 2023, ALJ Tracy held that "each specified request" in Starbucks' subpoenas violated Section 8(a)(1) of the NLRA. RE7. According to the ALJ, one problem with the subpoenas was that they "sought Section 7

protected information," including "any communications and documents the employees provided to the General Counsel along with their affidavits."  RE6.  The NLRB has held that employer subpoenas that demand production of confidential Board affidavits are "inherently coercive and unlawful."  *See Santa Barbara News-Press*, 358 NLRB 1539, 1540 (2012), *incorporated by reference in* 361 NLRB 903 (2014).

Although Starbucks' subpoena instructions specifically excluded confidential affidavits and other Section 7 protected information from its requests, the ALJ said that the subpoenas' simultaneous request for "statements, declarations, or affidavits," ROA.268; RE3, nullified the exclusion in the instructions, RE6.  Subpoenas that both request and exempt affidavits are "confusing," according to the ALJ, so the instructions did not save the subpoenas from being unlawful.  RE6.

According to the ALJ, the subpoenas also "sought information about employees' Section 7 conduct, including their recordings of meetings about their union organizing, communications amongst employees, and documents related to such communications."  RE7.  Unlike requests for confidential affidavits, the Board has not held that requests for this type of information are

"inherently coercive and chilling." But the ALJ held that these requests too violated Section 8(a)(1) of the NLRA. RE7.

The ALJ concluded that the "proper standard to apply" to determine whether the subpoenas violated Section 8(a)(1) was "that contained in *National Telephone Directory*." RE7 (citing 319 NLRB 420 (1995)). In that case, the Board reviewed on an interlocutory basis an ALJ's discovery ruling. *See* 319 NLRB at 420. According to the ALJ in *this* case, in *National Telephone Directory* the Board "held that an employer in an unfair labor practice proceeding was not entitled to obtain the names of employees who attended union meetings and signed authorization cards." RE7. The ALJ noted that the Board reached that conclusion by "utiliz[ing] a balancing test" to conclude that "employees' rights under Section 7 to keep their protected activities confidential outweighed the employer's need for the information to present its defense." RE7. The ALJ held that the "balancing of interests yields the same result in this case." RE7.

The ALJ acknowledged that Starbucks "has every right to issue subpoena duces tecum under the Board's rules and regulations." RE7. But, the ALJ noted, when crafting its subpoenas Starbucks "must carefully balance [its] rights" so as "not to outweigh employees' Section 7 rights." RE7. A

20

miscalibration or overbroad request may "infringe[]" on an employee's "right to engage in confidential protected activity, including participating in Board processes" and subject Starbucks to liability under the NLRA.  RE8.

Starbucks filed exceptions to the ALJ's decision with the Board. ROA.121-25.  But on September 6, 2024, the Board summarily adopted the ALJ's opinion with minimal revisions.[2]  RE1-2.  The Board ordered Starbucks to stop issuing subpoenas to employees that request information related to employees' union activities and participation in Board processes.  RE1.  The Board also required Starbucks to post a notice at its La Quinta store notifying employees that the Board had determined that Starbucks "violated Federal labor law" and reminding employees of their Section 7 rights.  RE1-2, RE10-11.

## SUMMARY OF ARGUMENT

I.    The Board erred when it announced, with no accompanying reasoning, that the "proper standard" to evaluate whether subpoenas issued

_____

[2] The Board, on the ALJ's recommendation, dismissed a separate charge that Starbucks' subpoenas were a disciplinary action taken against Hernandez and Cardenas for their participation in the Board process in violation of Section 8(a)(4) of the NLRA.  *See* RE1 & n.2, RE8-9.  That ruling is not at issue in this petition.

in a distinct Board enforcement proceeding constituted an unfair labor practice was "that contained in *National Telephone Directory*," referring to a 1995 Board decision about whether employees' union activities are protected from disclosure during Board proceedings.  RE7.

A.  The Board engaged in arbitrary and capricious decisionmaking when it, without explanation, converted *National Telephone*'s discovery test into a liability standard under Section 8(a)(1) of the NLRA.

*National Telephone* is a case about discovery standards, not about what qualifies as an unfair labor practice.  The *National Telephone* test is tailored toward determining whether employees' union activities are protected from disclosure, by balancing the employees' confidentiality interests in their activities against an employer's need for evidence to defend itself in Board proceedings.  By contrast, *this* case is about an alleged unfair labor practice. By transforming a discovery rule into a rule about what constitutes an unfair labor practice, the Board turned every revoked subpoena into an automatic Section 8(a)(1) violation.

The APA requires the Board to explain its reasons for adopting *National Telephone*'s balancing test as a liability standard under Section 8(a)(1). Here, the Board provided no explanation.  It did not even acknowledge

that it was departing from its precedent by converting *National Telephone* from a confidentiality rule to a liability standard, much less describe its reason for doing so. Nor does other Board precedent explain why the Board would use *National Telephone*'s balancing test as a liability standard. The Board thus violated a fundamental principle of administrative law by promulgating a new standard without supporting reasoning.

B. Using *National Telephone*'s balancing test as a standard for liability is inconsistent with the text of Sections 8(a)(1) and 8(c). Section 8(a)(1) imposes liability on an employer only when the employer "interfered with, restrained, or coerced" employees in the exercise of their Section 7 rights, and Section 8(c) protects an employer's speech unless it contains a threat of reprisal. A test that balances employee and employer interests in evidence bears no relation to the statutory text and deprives employers of fair notice.

The Board's interpretation of Section 8(a)(1) also runs afoul of employers' First Amendment right to petition. Requesting subpoenas in Board proceedings constitutes direct petitioning of the Board or conduct incidental to petitioning the Board as part of the employer's defense. Accordingly, Section 8(a)(1) must be construed only to impose liability in cases involving sham subpoenas—*i.e.*, subpoenas that are objectively baseless and

23

are brought with the specific intent to further wrongful conduct.  The Board applied neither step of the sham petition test in this case.

II.   The Board's holding that Starbucks committed an unfair labor practice was arbitrary and capricious and lacked substantial evidence.

A.  The Board engaged in arbitrary and capricious decisionmaking when it identified *National Telephone*'s balancing test as the "proper standard" for liability in this case, but then failed to actually apply the test.  *National Telephone*'s test proceeds in three steps:  (1) identify the employees' interest in keeping the requested information confidential; (2) consider the employer's interests in the information; and (3) balance the two interests to determine whether the employees' interests outweigh the employer's.  The Board omitted the final two steps of *National Telephone*'s test.  Instead, it held in one conclusory sentence that in *National Telephone*, the interest-balancing test favored the employee, and the "balancing of interests yields the same result in this case."  RE7.  The Board's failure to weigh, much less identify, Starbucks' interests against the partners' confidentiality interests rendered the Board's decision arbitrary and capricious.

B.  The Board held that Starbucks violated Section 8(a)(1) by requesting two separate categories of documents from Hernandez and Cardenas:

24

(1) Section 7 protected information, and (2) information about employees' Section 7 conduct.

As to the Section 7 protected information, the Board erred when it held that Starbucks committed an unfair labor practice by requesting "Section 7 protected information" (like Board witness affidavits) from Hernandez and Cardenas. *First*, no evidence supported the Board's finding that Starbucks requested Section 7 protected information. To the contrary, Starbucks' subpoenas explicitly instructed Hernandez and Cardenas *not* to turn over confidential Board documents. *Second*, under this Court's precedent, whether Starbucks committed an unfair labor practice depends on whether its questions, threats, or statements "tend to be coercive" when considered "within the totality of circumstances surrounding the occurrence at issue." *NLRB v. Pneu Elec., Inc.*, 309 F.3d 843, 850 (5th Cir. 2002). Instead of considering the totality of the circumstances, here the Board improperly held that discovery requests for Section 7 protected information are "inherently coercive," making Starbucks per se liable.

As to information about Section 7 conduct, the Board failed to consider the totality of the circumstances when it held that Starbucks' subpoena requests would chill Hernandez's and Cardenas's exercise of their Section 7

rights. *See Pneu Elec.*, 309 F.3d at 850. Instead, using *National Telephone*'s balancing test as a proxy for a liability standard, the Board considered only whether Hernandez and Cardenas had an interest in keeping their Section 7 conduct confidential, and whether they might hypothetically be chilled by *disclosure* of that information. But the Board failed to consider the myriad of circumstances that mitigated any chance that Starbucks' subpoenas would coerce employees' exercise of their Section 7 rights.

## STANDARD OF REVIEW

This Court reviews the NLRB's legal conclusions de novo. *ExxonMobil Rsch. & Eng'g Co., Inc. v. NLRB*, --- F.4th ----, 2025 WL 782692, at *4 (5th Cir. Mar. 12, 2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403-05 (2024). Further, as an administrative agency, the NLRB must comply with the APA's requirement of "reasoned decisionmaking." *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020) (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)). That means that the legal standards that the Board adopts must be "rational and consistent with" the NLRA and that the Board's application of those standards "must be reasonable and reasonably explained." *Id.* (cleaned up).

The Court reviews the Board's factual findings for substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hudson Inst. of Process Rsch. Inc. v. NLRB*, 117 F.4th 692, 699 (5th Cir. 2024) (alterations adopted). Under substantial evidence review, the Court should not "reweigh the evidence" or "substitute its judgment for that of the NLRB." *Id.* at 699-700 (citations omitted). But the Court's deference "has limits"—its review "is not *pro forma* or merely a rubber stamp." *Id.* at 700 (citations omitted).

When the Board affirms and adopts an ALJ's findings and conclusions, as here, the Court applies these same standards to the ALJ's decision. *See In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707, 714 (5th Cir. 2018).

## ARGUMENT

### I.    THE BOARD VIOLATED THE APA AND THE NLRA BY ADOPTING *NATIONAL TELEPHONE*'S BALANCING TEST AS A LIABILITY STANDARD FOR UNFAIR LABOR PRACTICES.

It is a fundamental rule of administrative law that agencies must engage in "reasoned decision-making." *Renew Home Health v. NLRB*, 95 F.4th 231, 243 (5th Cir. 2024). That requirement applies whether an agency adopts regulations through notice-and-comment rulemaking or, like the NLRB, promulgates legal rules through adjudication. *Allentown Mack Sales & Serv.,*

27

*Inc. v. NLRB*, 522 U.S. 359, 374 (1998). Agencies must also ensure that their rules and standards faithfully interpret Congress' statutes, *see Hudson Inst. of Process Rsch. Inc. v. NLRB*, 117 F.4th 692, 700 (5th Cir. 2024) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403-05 (2024)), as an agency "literally has no power to act" unless "Congress authorizes it to do so by statute," *FCC v. Cruz*, 596 U.S. 289, 301 (2022) (citation omitted). The Board flouted both of those requirements when it imposed on Starbucks a new standard for liability under Section 8(a)(1) without offering any explanation and by adopting a standard that bears no relationship to Congress' prescribed definition of an "unfair labor practice" and that infringes employers' First Amendment right to petition.

## A.  The Board's Failure to Explain Its Adoption of the *National Telephone* Balancing Test to Assess Employer Liability Under Section 8(a)(1) Violated the APA.

The requirement of reasoned decisionmaking means that when the Board adopts a new rule, expands on a precedent, or departs from its precedent, it must "display awareness" that it is doing so, explain how its rule is "permissible under the statute," and demonstrate that "there are good reasons for the new policy." *Circus Circus Casinos*, 961 F.3d at 476 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). The Board

28

neglected each of these requirements when it held that Starbucks committed an unfair labor practice in violation of Section 8(a)(1). RE1, RE7-8. Instead, the Board's conclusion that Starbucks violated Section 8(a)(1) by merely requesting "information about employees' Section 7 conduct," RE7, relied on a new test drawn from discovery standards that the Board neither explained nor justified.

1. The Board found that Starbucks' subpoenas requested information about partners' Section 7 conduct. Although the Board has fashioned rules governing when subpoenas requesting confidential Section 7 *protected documents* constitute an unfair labor practice, *see infra* p. 53-54, Starbucks' subpoenas seeking information about Section 7 *conduct* presented the Board with a distinct scenario. The Board needed to address what happens when an employer's subpoenas, "issued pursuant to Section 102.31 of the Board's rules and regulations" in the "underlying unfair labor practice proceeding itself," seek documents that might reveal information about the employees' union or Board activities. RE7. In other words, can an employer's subpoenas in an NLRB proceeding constitute an unfair labor practice under Section 8(a)(1) and, if so, under what circumstances?

The Board announced in this case that the "proper standard" to apply was "that contained in *National Telephone Directory*," referencing a prior Board decision from 1995. RE7 (citing 319 NLRB 420 (1995)). The *National Telephone* "standard," though, was not designed to assess whether employer subpoenas "interfere with, restrain, or coerce" employees' exercise of their Section 7 rights. *See* 29 U.S.C. § 158(a)(1). Instead, *National Telephone* announced a discovery rule to aid the Board and courts in assessing whether unions and employees may withhold documents that are relevant to an employer's defense because of superseding confidentiality interests. The test balances "employees' rights under Section 7 to keep their protected activities confidential" with an "employer's need for the information to present its defense." RE7. When the employees' interests outweigh the employer's, the documents are considered protected and may be withheld even if relevant to the employer's defense. *See Nat'l Tel. Directory*, 319 NLRB at 421-22.

The Board's decision to invoke *National Telephone*'s discovery rule as a test for liability under Section 8(a)(1) broke new ground. The Board has never formally adopted *National Telephone*'s balancing test as the standard for determining whether an employer has violated Section 8(a)(1). And it gave no explanation for doing so now.

30

2. *National Telephone* promulgated a discovery rule.

In *National Telephone*, the Board accepted a special, interlocutory appeal from an unfair labor practice proceeding to resolve an employer's request for union authorization cards and for the names of employees who had signed the cards and attended a union meeting. 319 NLRB at 420. The employer, National Telephone Directory, had been accused of dismissing an employee because she helped organize employee support for the union, including arranging meetings between a union organizer and National Telephone Directory's employees. *Id.* Before the administrative hearing, the employer served a subpoena on one of the General Counsel's witnesses (the union organizer) requesting production of union authorization cards and "other documents relating to union activity." *Id.* When the subpoena went unanswered, the employer moved for production of these documents while cross-examining the witness at the hearing. *Id.*

The Board held that the subpoena must be quashed and the motion for production denied. *Id.* at 422. The Board recognized that employers generally have a right to "full cross-examination of witnesses in unfair labor practice proceedings." *Id.* at 421. But, the Board concluded, employees also have an interest in keeping authorization cards confidential because employees may be

31

"chilled" from signing union authorization cards if they "knew the employer could see who signed." *Id.* (citation omitted).

In *National Telephone*, the Board determined that the argument for confidentiality favored the employees. *Id.* at 420-21. Although the Board blocked the employer from cross-examining the witness on one aspect of her testimony, the Board emphasized that its ruling did not leave the employer "without the means to test the witness' credibility and otherwise present a vigorous defense." *Id.* at 422. Accordingly, the "confidentiality interests of employees who have signed authorization cards and attended union meetings" were "paramount to the [employer's] need to obtain the identities of such employees for cross-examination and credibility impeachment purposes." *Id.* at 421.

3. This case, unlike *National Telephone*, does not involve a dispute over whether documents are discoverable. ALJ Wedekind already resolved in the underlying proceeding whether Hernandez's and Cardenas's documents were protected from disclosure, and the ALJ invoked *National Telephone*'s balancing test in doing so. ROA.414 & n.2 (citing *Trump Ruffin Com. LLC*, 2016 WL 4036983, at *1 n.1 (NLRB July 28, 2016) (invoking *National Telephone* rule)). In a one-page order, ALJ Wedekind held that Starbucks

was not entitled to subpoena relevant documents from Hernandez and Cardenas in the underlying Board proceeding because Starbucks requested either confidential Board documents or because the documents "would reveal protected conduct or communications by the two employees and other employees." ROA.414 & n.2. Starbucks is no longer seeking information about Hernandez's and Cardenas's union activities, nor are Hernandez and Cardenas seeking to withhold information.

Instead, *this* case is about what constitutes an unfair labor practice: specifically, did Starbucks' subpoenas somehow "interfere with, restrain, or coerce" Hernandez and Cardenas in the exercise of their Section 7 rights? 29 U.S.C. § 158(a)(1). Yet the Board held that *National Telephone* prescribes the "proper standard" to answer that question too.

Exactly why or how *National Telephone*'s balancing test works as a liability standard is not self-evident. *See infra* pp. 37-43. But momentarily setting aside the merits of adopting *National Telephone*'s balancing test as a standard for liability under Section 8(a)(1), the Board failed an even more basic prerequisite in promulgating this test: it failed to offer its *own* explanation for selecting the test. At no point did the Board even "display awareness" that it was departing from its precedent by converting *National Telephone* from a

discovery rule to a liability standard, *see Circus Circus Casinos*, 961 F.3d at 476 (quoting *Fox Television*, 556 U.S. at 515), nor did it consider whether Starbucks had "fair notice and an opportunity to conform [its] behavior" to the Board's new liability standard, *id.*; *see Lion Elastomers, LLC v. NLRB*, 108 F.4th 252, 260 (5th Cir. 2024).  And the Board also did not explain how using *National Telephone*'s balancing test to determine whether employers engaged in unfair labor practices is "permissible under the statute." *Circus Circus Casinos*, 961 F.3d at 476 (quoting *Fox Television*, 556 U.S. at 515).  To do so, the Board would have had to explain how a finding that employees' confidentiality interests outweigh employers' evidentiary interests amounts to a finding that an employer "interfere[d] with, restrain[ed], or coerce[d] employees' in the exercise" of their Section 7 rights. *See* 29 U.S.C. § 158(a)(1). The Board made no effort to reconcile those two standards.  *See infra* pp. 37-38.

Nor do the Board's other precedents explain why *National Telephone*'s balancing test is appropriate to assess liability under Section 8(a)(1).  Since *National Telephone*, Board decisions have routinely used *National Telephone*'s balancing test to assess only whether evidence is protected from disclosure during unfair labor practice proceedings. *E.g.*, *Trump Ruffin Com.*,

34

2016 WL 4036983, at *1 n.1 (subpoenas properly partially revoked because employer's request for "any and all photographs or recordings" could "expose employee [Section 7] conduct," and "all subpoenaed material relevant to that conduct" was produced to the employer); *McDonald's USA, LLC*, 363 NLRB 1362, 1379 (2016) (subpoena for relevant materials regarding union activities revoked because the "potential chilling effect of disclosure" outweighs "the necessity of the information sought to McDonald's defense"); *Manor Care*, 356 NLRB 202, 233 (2010) (denying request for identities of employees engaged in union activity because employee confidentiality outweighed "marginally relevant" need for "facts concerning the union activity of employees"). Federal courts have also approvingly cited *National Telephone* in this limited context. *E.g.*, *Ozark Auto. Distribs., Inc. v. NLRB*, 779 F.3d 576, 581 (D.C. Cir. 2015). And, as mentioned, even in the underlying NLRB proceeding here, ALJ Wedekind cited the *National Telephone* test in revoking Starbucks' subpoenas. ROA.414 & n.2.

      Meanwhile, the Board has cited *National Telephone* for propositions unrelated to confidentiality only in a handful of cases. No precedent formally adopts the balancing test as a "standard" for holding employers liable under Section 8(a)(1). Instead, ALJs and the Board have simply cited to *National*

*Telephone* for the general propositions that disclosure of union authorization cards may chill union activity, *see, e.g.*, *Veritas Health Servs., Inc.*, 362 NLRB 283, 283 n.1 (2015); *In re Dilling Mech. Contractors, Inc.*, 357 NLRB 544, 546 (2011), and that employees have an interest in keeping their union activities confidential, *see, e.g.*, *Tesla, Inc.*, 370 NLRB No. 101, slip op. at 17 (Mar. 25, 2021); *Century Rest. & Buffet, Inc.*, 358 NLRB 143, 158 (2012).

Administrative law rests on the principle that agencies may not act in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Here, the "NLRB has violated that cardinal rule" by adopting (but misapplying) "a new test to determine whether" requests for information about union activities violate Section 8(a)(1), "without explaining its reasons for doing so." *ABM Onsite Servs.-W., Inc. v. NLRB*, 849 F.3d 1137, 1142 (D.C. Cir. 2017). When the Board "depart[s] from [its] precedent without explaining why," its decision is arbitrary and capricious, and courts have "no choice but to remand for a reasoned explanation." *Circus Circus Casinos*, 961 F.3d at 476 (citation omitted).

**B.    The Board's Adoption of the *National Telephone* Balancing Test To Assess Employer Liability Under Section 8(a)(1) Violated the NLRA.**

Even if the Board had tried to explain why it deemed *National Telephone* the "proper standard" for liability in this case, it could not remedy a more fundamental flaw: *National Telephone*'s balancing test is incompatible with the liability standard set by Congress in the NLRA.

1.   *National Telephone*'s balancing test is simply the wrong test for liability under Section 8(a)(1).  The Board can impose liability for an unfair labor practice under Section 8(a)(1) only if the General Counsel proves that an employer "interfere[d] with, restrain[ed], or coerce[d] employees in the exercise of the rights guaranteed in" Section 7 of the NLRA.  29 U.S.C. § 158(a)(1).  Any standard of liability that the Board adopts must be consistent with that text, and the Court no longer "defer[s] to an agency's interpretation" of the statute.  *Hudson Inst.*, 117 F.4th at 700.

Here, the Board departed from the plain text of the NLRA by holding that an employer violates Section 8(a)(1) simply by falling on the wrong side of *National Telephone*'s subjective balancing test.  The question whether Hernandez's and Cardenas's confidentiality interests outweigh Starbucks' need for the requested information has nothing to do with whether Starbucks'

subpoenas coerced or interfered with the partners' union activities. The words Congress selected—"interfere," "restrain," and "coerce"—all capture Congress' desire to prevent employers' actions that significantly discourage union activity.

What is more, subpoenas are First-Amendment-protected speech, and thus are protected from liability under Section 8(c) unless they contain a "threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). But the *National Telephone* test is not directed to ferreting out threats of reprisal.

Coercive threats of reprisal do not turn on a balancing of interests in documents. And the Board's unexplained suggestion that it does shows just how far the Board has now departed from the NRLA's text. A balancing of employer-employee interests is simply the wrong test for this statutory standard.

2. Even apart from the statutory text, glaring warning signs underscore that *National Telephone* cannot be the "proper standard" for liability under Section 8(a)(1), as the Board held here. *See* RE7. Using the same balancing test both to evaluate confidentiality concerns with discovery *and* to assess employer liability under Section 8(a)(1) raises a host of constitutional concerns.

A balancing test like *National Telephone*'s is far too vague to be used as a standard of liability for unfair labor practices.  As the Supreme Court has stressed, "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ to its application violates the first essential of due process of law").  *National Telephone* fails to give employers notice or even a semblance of certainty as to whether their discovery requests are permissible under Section 8(a)(1) or not.  Because the implementation of the balancing test necessarily involves discretion, employers cannot predict with confidence how an ALJ will apply the test to revoke a subpoena.  If this rule is affirmed, employers will be forced to themselves "carefully balance their rights when crafting [] subpoenas so as not to outweigh employees' Section 7 rights," RE7, but be left guessing what interests the ALJ will consider and what weight those interests will carry.

The Board's decision thus will chill employers' exercise of their right to subpoena evidence under the Board's rules.  Under the decision in this case,

every revoked subpoena could be charged as an unfair labor practice. Employers will thus forgo utilizing one of the few discovery tools that they are entitled to before an NLRB administrative hearing rather than risk a new unfair labor practice charge if an ALJ revokes their subpoena.

By imposing liability based on employers' requests for subpoenas, the Board's rule also unconstitutionally interferes with employers' right to petition the government. The Supreme Court has described the First Amendment right to petition as one of our "most precious" liberties. *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (citation omitted). "Under the *Noerr-Pennington* doctrine, those who petition any department of government for redress are *generally immune* from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (emphasis added). "When a person petitions the government in good faith, the First Amendment prohibits any sanction on that action." *Venetian Casino Resort, LLC, v. NLRB*, 793 F.3d 85, 89 (D.C. Cir. 2015) (Kavanaugh, J.) (citation omitted). Courts "must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931.

40

The First Amendment protects petitions directed at "all departments of the Government," including "administrative agencies." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). In order to provide "breathing space" for petitioning activity, the First Amendment protects both direct petitioning of the government and actions "incidental" to such petitioning, including "private litigation communications" such as subpoenas. *Sosa*, 437 F.3d at 933-35 & n.7.

By availing itself of the Section 102.31(a) process established by the Board, Starbucks was engaged in protected petitioning conduct—both because it petitioned the Regional Director to issue the subpoenas and because its invocation of Board procedures to subpoena documents was incidental to protected petitioning activity—its defense of the Board proceedings. *See Freeman v. Lasky, Hass & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("*Noerr–Pennington* immunity, and the sham exception, also apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition." (citing *In re Burlington N., Inc.*, 822 F.2d 518, 532-33 (5th Cir. 1987))).

To impose liability under Section 8(a)(1) for petitioning activity notwithstanding the First Amendment, the Board must show the activity

41

qualifies as a "sham." *Venetian Casino*, 793 F.3d at 92 (citation omitted). To qualify as a "sham," a petition must be "objectively baseless" and "brought with the specific intent to further wrongful conduct through the use of governmental process." *Id.*; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 744 (1983) ("the prosecution of an improperly motivated suit lacking a reasonable basis constitutes a violation of the Act that may be enjoined by the Board"). Importantly, Section 8(a)(1) does not permit the Board to consider a petition "objectively baseless" just because it did not succeed; something more is required. *See BE&K Constr.*, 536 U.S. at 531.

The *National Telephone* balancing test adopted by the Board below satisfies neither element of the sham petitioning test. Under the Board's test, any subpoena that is revoked—*i.e.*, that does not succeed—based on a balancing of interests imposes liability under Section 8(a)(1). *Supra* p. 40. The test is not limited to objectively baseless subpoenas. And the Board's test lacks any subjective intent requirement at all. If the Board had required subjective intent to retaliate, as required to find Starbucks' subpoenas to constitute sham petitioning, it would have ruled for Starbucks, because the ALJ found that "[w]hile the record is clear that Hernandez and Cardenas participated in Board processes by providing affidavits, preparing to testify,

and testifying at the hearing, the record lacks any evidence that [Starbucks] knew of their activity prior to issuing the subpoenas." RE8-9. The ALJ further found that even if Starbucks did know that Hernandez and Cardenas participated in the Board's process, the General Counsel's evidence did "not establish animus proving that [Starbucks] issued the subpoenas to Cardenas and Hernandez discriminatorily for cooperating with the Board investigation." RE9-10.

To protect employers' right to petition the Board in order to defend themselves in Board proceedings, the Court should construe Section 8(a)(1) to prohibit only "sham" subpoenas.

## II.  THE BOARD'S DECISION THAT STARBUCKS COMMITTED AN UNFAIR LABOR PRACTICE WAS ARBITRARY AND CAPRICIOUS AND LACKED SUBSTANTIAL EVIDENCE.

Even if the Board had identified the "proper standard" for liability, as it claimed, its incomplete and cursory findings fell far short of the APA's required "reasoned decision-making." *Renew Home Health v. NLRB*, 95 F.4th 231, 243 (5th Cir. 2024). At a minimum, when the Board purports to apply an established rule from existing decisions, it must actually "apply the standard set forth in those decisions." *Apache Corp. v. FERC*, 627 F.3d 1220, 1223 (D.C. Cir. 2010) (Kavanaugh, J.). Yet the Board failed to faithfully apply

its own liability test. Its half-baked "balancing" of employee-employer interests only considered the interests on the employee's side of the scale, making the Board's liability finding a foregone conclusion.

Further, in holding Starbucks liable for seeking "Section 7 protected information" and "information about employees' Section 7 conduct," the Board disregarded evidence that Starbucks never sought Section 7 protected information in its subpoenas. RE6-7. And, ultimately, the Board relied on unsupported generalizations about what hypothetically chills employees' union activity, rather than considering whether Starbucks' subpoenas would coerce employees in the "totality of [the] circumstances" of *this* case. *See NLRB v. Pneu Elec., Inc.*, 309 F.3d 843, 850 (5th Cir. 2002). The Board's conclusory holding that Starbucks' subpoenas violated Section 8(a)(1) thus violated the APA, as the Board failed to "articulate a satisfactory explanation" for its conclusions that demonstrates that its decision is "based on a consideration of the relevant factors" and that there is a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted).

**A.    The Board Failed To Identify or Balance Starbucks' Interests When Purporting To Apply *National Telephone*'s Balancing Test.**

Even if, as the Board held, *National Telephone* were the "proper standard to apply," RE7, and even if the Board explained its rationale for adopting that standard, the Board's decision must be set aside because it "never even attempted" to "balance [Hernandez's and Cardenas's] interests against [Starbucks'] need for the documents," as required by the *National Telephone* test, *see Ozark Auto. Distribs., Inc. v. NLRB*, 779 F.3d 576, 581 (D.C. Cir. 2015).

This Court has consistently "refused to enforce Board orders" that have "no reasonable basis in law, either because the proper legal standard was not applied or because the Board applied the correct standard but failed to afford the plain language of the standard its ordinary meaning." *NLRB v. Magna Corp.*, 734 F.2d 1057, 1061, 1063 (5th Cir. 1984) (citation omitted). The Board's failure to identify, consider, and weigh Starbucks' interests in the subpoenaed information and its interest in effectively mounting a defense to the General Counsel's allegations, as *National Telephone* requires, is an independent reason to vacate and remand. *See Apache*, 627 F.3d at 1223.

The *National Telephone* balancing test has three components. *First*, the Board must identify the employees' interest in keeping the requested information confidential. *See Nat'l Tel. Directory Corp.*, 319 NLRB 420 (1995). The Board did that here, at least in part, holding that the documents Starbucks had subpoenaed "could reveal [] confidential communications" with "the Union and other employees" that Hernandez and Cardenas had tried to keep private. RE7. The Board, however, did *not* evaluate whether "at least some of the document requests did not implicate any employee's confidentiality interests." *See Ozark Auto. Distribs.*, 779 F.3d at 581. Instead, it just broadly ascribed a confidentiality interest to all requested documents. RE7.

*Second*, the Board must consider the employer's interests in the information. An employer has a strong interest in being able to introduce relevant evidence that might "impeach the evidence offered against it." *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961). So the Board's consideration may require the Board to walk through each of the employer's requested documents and identify their relevance (or lack thereof). *E.g.*, *McDonald's USA, LLC*, 363 NLRB 1362, 1362 (2016). Or the Board may have to consider whether the evidence is needed to support a critical or peripheral

46

aspect of the defense. *E.g.*, *Ozark Auto. Distribs.*, 779 F.3d at 581-82. And the Board may need to consider whether other testimony or other evidence could satisfy the employer's need for the requested information. *E.g.*, *Nat'l Tel. Directory*, 319 NLRB at 422.

But the Board here never tried to identify or consider the weight of Starbucks' interests in any of the subpoenaed information. In briefing and at the hearing, Starbucks repeatedly argued that the subpoenaed information was "incredibly relevant" to its defense in the underlying unfair labor practice case. ROA.24; *see also* ROA.246. Indeed, Starbucks' request for "[a]ll journals or notebooks [the employees] kept related to [their] employment at Starbucks' La Quinta store," eventually led to production of pages from Hernandez's journal that helped impeach Hernandez's testimony. *See* ROA.269, 284; *Starbucks Corp.*, 372 NLRB No. 159, slip op. at 2 & n.24 (Nov. 28, 2023). That discredited testimony was instrumental to the dismissal of all charges against Starbucks in the underlying case. *Starbucks*, 372 NLRB No. 159, slip op. at 2. To be sure, ALJ Wedekind also held that Starbucks' subpoenas requested some irrelevant documents. ROA.414. But the Board's error here was not simply affording the wrong weight to Starbucks' interests—it overlooked them altogether.

47

*Third*, under *National Telephone*, the Board must balance the two interests to determine whether the employees' interests outweigh the employer's. 319 NLRB at 421. But because the Board failed to even identify Starbucks' interest, it could not complete this step. Instead, it merely asserted in a single conclusory sentence that in *National Telephone*, the interest-balancing test favored the employee, and that the "balancing of interests yields the same result in this case." RE7. Such lip service to the balancing of interests is a far cry from the reasoned explanation required by the APA. *See Allentown Mack Sales*, 522 U.S. at 374. In *Ozark Automotive Distributors*, the court denied enforcement and remanded because the Board used "flawed" reasoning to support the revocation of employer subpoenas under *National Telephone* and "never even attempted to balance [] employee interests against the company's need for the documents." 779 F.3d at 581.

The Board's conclusory analysis also overlooks the fact that Starbucks eventually obtained documents it requested in its subpoenas. Starbucks unquestionably had a strong interest in procuring the evidence that exonerated it from the General Counsel's charges. Starbucks' interest in Hernandez's journal entries ultimately did outweigh Hernandez's confidentiality interests, since ALJ Wedekind required the General Counsel

at the hearing to produce pages from Hernandez's journals and to turn over her Board witness affidavit. *See Starbucks*, 372 NLRB No. 159, slip op. at 2 & n.24. But the Board's analysis in this case did not factor in that result at all. Instead, it held that "*each* specified request … of [Starbucks'] subpoenas duces tecum to Hernandez and Cardenas"—including the requests for the key journal entries—violated Section 8(a)(1) of the NLRA. RE7 (emphasis added).

Agencies violate the APA when they "purport[] to follow [their] precedents but then fail[] to apply the standard set forth in those decisions." *Apache*, 627 F.3d at 1223. And the Board's analysis here was not a faithful application of *National Telephone*. The NLRB's failure to weigh, much less identify, Starbucks' interests against Hernandez's and Cardenas's confidentiality interests as *National Telephone* requires rendered the Board's decision arbitrary and capricious under the APA. *See id.*

## B.    The Board Failed to Consider Relevant Factors and Disregarded Key Evidence When Determining that Starbucks' Subpoena Requests Were Coercive.

At bottom, the Board's analysis in this case should have turned on the simple application of Section 8(a)(1)'s standard to the facts: did Starbucks "interfere with, restrain, or coerce" Hernandez and Cardenas "in the exercise of" their Section 7 rights? Or, as this Court's test asks, did Starbucks' requests

49

or actions "tend to be coercive," whether or not "the employees [were] in fact coerced"? *Renew Home Health*, 95 F.4th at 242 (citation omitted).  According to the Board, Starbucks committed an unfair labor practice simply by using a Board-approved process to request "Section 7 protected information" and "information about employees' Section 7 conduct."  RE6-7.  But its conclusory analysis, unjustified assumptions, and reliance on inapposite precedent rendered the Board's conclusions arbitrary and capricious, and its disregard of key evidence left the Board's decision unsupported by substantial evidence.

1. *Requests for Section 7 Protected Information.*  The Board held that Starbucks' subpoenas had requested "Section 7 protected information," including "any communications and documents the employees provided to the General Counsel along with their affidavits."  RE6.  The NLRB treats subpoenas for Board affidavits as "inherently coercive."  *Santa Barbara News-Press*, 358 NLRB 1539, 1540 (2012), *incorporated by reference in* 361 NLRB 903 (2014).  The Board thus concluded that Starbucks' request "for affidavits in contravention of the Board's well-established policy of protecting confidential witness affidavits from prehearing disclosure" and for other "documents and communications between employees and the Region" was

"coercive." RE1 n.3; *see also* RE6-7. The Board made two independent errors in reaching that conclusion.

*First*, Starbucks did not request confidential Section 7 protected information. And the Board's finding that it did lacks substantial evidence. The Board cited four requests that supposedly asked for "any communications and documents the employees provided to the General Counsel along with their affidavits," *see* RE6 & n.11. Those included:

1. "Documents provided by [Hernandez or Cardenas] to the Union and/or Region 21 [the General Counsel] concerning the allegations contained in the complaint, including but not limited to documents concerning the conduct of managers, supervisors, leaders or agents of Starbucks."

2. "Communications between [Hernandez or Cardenas] and the Union and/or Region 21 concerning the allegations contained in the complaint, including but not limited to communications concerning conduct of current or former managers, supervisors, leaders or agents of Starbucks."

3. "All statements, declarations, or affidavits, in any form, and any drafts thereof that [Hernandez or Cardenas] prepared or that have been taken from [Hernandez or Cardenas] by Board personnel, a representative of the Union, or any other person relating in any way concerning the allegations contained in the complaint."

4. "All documents, including electronically stored information such as emails, voicemails, and text messages, sent by [Hernandez or Cardenas] or received by [Hernandez or Cardenas] from any Board official, employee, or personnel from Region 21."

51

RE3.

Starbucks, however, explicitly carved out any and all confidential Board documents from its requests in the introduction to its subpoenas and expressly told the subpoena recipients that they were "not being asked to provide" any confidential questionnaires, affidavits, or statements. *See supra* pp. 12-14; ROA.261-64, 276-79. Definitions codifying exceptions like the ones that Starbucks included in its subpoenas are common in discovery requests to help "avoid[] repetitions in a long set of interrogatories" or other discovery requests. 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2168 (3d ed. 2024). Starbucks could have inserted exclusions of Board documents in each of its document requests, but to avoid wordiness and to improve readability, it simply defined the relevant scope of its requests in the instructions section of the subpoenas, as parties requesting documents commonly do.

Because Starbucks excluded confidential Board documents from its subpoena requests, Starbucks did not ask Hernandez or Cardenas to disclose Section 7 protected documents. The Board's contrary conclusion lacks substantial evidence. The Board dismissed the key piece of evidence that Starbucks did not request confidential documents:    the subpoenas'

instructions. In a single sentence, the Board glossed over the subpoenas' instructions, saying that Starbucks' simultaneous request for Board documents in the "requests" section of the subpoenas and exclusion of confidential Board documents in the "instructions" section was "confusing." RE6. On that reasoning, virtually every document request served in civil discovery in federal court would be "confusing." No reasonable factfinder could conclude that Starbucks requested confidential documents that it expressly instructed the subpoena recipient it was not requesting.

*Second*, even if Starbucks did request "Section 7 protected information," the Board erred in holding that Starbucks' request was "inherently coercive and unlawful" under Section 8(a)(1). RE6. That holding by the Board echoes other recent decisions of the Board finding employers per se liable for seeking copies of witness affidavits, which the Board generally keeps in confidence until the witness testifies during an unfair labor practice hearing. *E.g.*, *Interstate Power Tools & Machining Inc.*, 2025 WL 32471 (NLRB Jan. 3, 2025); *Tracy Auto, L.P.*, 372 NLRB No. 101, slip op. at 7 n.32 (July 6, 2023); *Santa Barbara News-Press*, 358 NLRB at 1540. The harm, the Board has said, is "in the very request itself" because employers' requests for witness affidavits will "have a chilling effect on employees' willingness to assist in the

General Counsel's investigation and litigation of unfair labor practice allegations." *Tracy Auto*, 372 NLRB No. 101, slip op. at 7 n.32 (citation omitted).

By holding that Starbucks' request for affidavits was "inherently coercive and unlawful," the Board ignored relevant factors and defied this Court's precedents.  In this Circuit, there is no such thing as "inherently coercive" questions, statements, or conduct.  Instead, this Court has interpreted Section 8(a)(1) to require a fact-intensive inquiry to determine whether an employer's questions, threats, or statements "tend to be coercive" when considered "within the totality of circumstances surrounding the occurrence at issue."  *Pneu Elec.*, 309 F.3d at 850; *see also NLRB v. Brookwood Furniture*, 701 F.2d 452, 459 (5th Cir. 1983).

Thus, in this Circuit, "[q]uestioning of employees as to union activities is not illegal *per se*." *Brookwood Furniture*, 701 F.2d at 460.  Nor is questioning employees about union association or affiliation automatically "unlawful under § 8(a)(1)." *NLRB v. McCullough Env't Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993).  Employers' questions violate Section 8(a)(1) "*only if*, considering the totality of the circumstances, the interrogation tends to [be] coerc[ive]." *Id.* (citation omitted).  In other words, this Court does not recognize (as the Board

does) any inherent "harm" in an employer's "request itself," *Tracy Auto*, 372 NLRB No. 101, slip op. at 7 n.32, as long as the circumstances of an employer's request for information do not indicate coercion.   That is why, in NLRA unlawful-interrogation cases, this Court invokes an *eight-factor test* to tease out whether employers' questions about union association or activity cross the threshold of coercion.   *McCullough Env't Servs.*, 5 F.3d at 928 (citing *Bourne v. NLRB*, 332 F.2d 47, 48 (2d Cir. 1964) (per curiam)).

The Board bypassed any inquiry into the "totality of circumstances" surrounding Starbucks' subpoena request for Hernandez's and Cardenas's affidavits, deciding instead that the requests themselves were "inherently coercive."   RE6.   The Board, for instance, failed to consider whether reasonable employees would tend to be coerced in light of Starbucks' instructions *not* to produce confidential affidavits and statements.   ROA.261-64, 276-79.   It glossed over the fact that witness affidavits are held in strict confidence by the Board (and have been for decades), so there was no possibility that confidential witness affidavits would be disclosed to Starbucks. 29 C.F.R. § 102.118(a).   It failed to consider that Hernandez and Cardenas already were preparing to testify at Starbucks' administrative hearing the next month, meaning that they already were prepared for Starbucks to receive

55

copies of their witness affidavits following their testimony and be cross-examined on every line of those affidavits. *See* ROA.36-37; 29 C.F.R. § 102.118(e); *cf. NLRB v. Schill Steel Prods., Inc.*, 408 F.2d 803, 805 (5th Cir. 1969) (noting less "danger of coercion or reprisal" when employers request that the statements of Board witnesses "be turned over at the discovery stage rather than during the course of the hearing"). And it failed to consider that Starbucks made these requests within the context of an administrative adjudication, where the Board provides a ready process for revoking any overbroad or improper subpoena requests to prevent disclosure of protected documents. *See* 29 C.F.R. § 102.31. Any one of these context-specific factors could have shifted the Board's analysis. The Board's failure to account for any of these factors and instead find Starbucks' subpoenas "inherently coercive" as a categorical matter rendered the Board's decision arbitrary and capricious. *See State Farm*, 463 U.S. at 43.

2. *Requests for Information About Employees' Section 7 Conduct.* The Board also erred when it concluded that Starbucks' other subpoena requests—those targeted at "information about employees' Section 7 conduct"—would tend to chill "reasonable employees' participation in Section 7 activity" in conducting one half of the *National Telephone* balancing test. RE7. Like its

56

analysis of Starbucks' request for "Section 7 protected information," the Board did not consider whether, in the "totality of circumstances," Starbucks' mere *requests* for information about union activity would tend to coerce employees. Instead, it rested its analysis on inapplicable precedent discussing the harms of *disclosure* of information about employees' union activities.

The Board's discussion of how Starbucks' request for documents about union activities would chill reasonable employees blended the potential harm caused by *requests* for confidential information and the potential harm that flows from employers' actually *accessing* confidential information. As the Board recognized, employees' confidentiality interests have "long been an overriding concern" to both the Board and the courts. RE7. That is because both the Board and the courts have long recognized that the *disclosure* of employees' union-related activities may lead to coercion. For example, if employers had unfettered access to union authorization cards, it is "entirely plausible that employees would be 'chilled' when asked to sign a union card" out of fear that their employers would learn their identities. *See Comm. on Masonic Homes v. NLRB*, 556 F.2d 214, 221 (3d Cir. 1977); *see also Nat'l Tel. Directory*, 319 NLRB at 421. Or if pre-hearing "disclosure" of Board witness statements were granted to employers, employees might become unwilling to

make "uninhibited and non-evasive statements" in Board investigations. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 226 (1978) (cleaned up). Similarly, if employers surveil employees or give the impression that they are collecting the names of union supporters, employees may be unwilling to participate in union meetings or other union organizing activity. *E.g.*, *NLRB v. Beretta USA Corp.*, 943 F.2d 49 (4th Cir. 1991); *J.P. Stevens & Co. v. NLRB*, 638 F.2d 676, 683 (4th Cir. 1980).

Citing these cases discussing the dangers of *disclosing* information about employees' union conduct, the Board concluded that Starbucks' requests for information about Hernandez's and Cardenas's union activities would have the exact same chilling effect as if Starbucks actually received production of all the requested documents. But it made this leap in logic without any explanation. It did not cite testimony or other evidence tending to show that employees would feel coerced because of the subpoenas (and there was no evidence that Hernandez and Cardenas felt coerced or changed their union or Board activities because of the subpoenas). Nor did it consider or even acknowledge that documents were never produced in response to Starbucks' subpoenas because the ALJ granted the General Counsel's petition to revoke. And it did not cite any precedent showing that employees "tend to be coerced"

by mere requests for information about employees' union activities. Indeed, this Circuit's precedent *and* the NLRB's own precedent actually holds the opposite: employers "*may* question employees regarding their union involvement as long as no coercion is present." *Poly-Am., Inc. v. NLRB*, 260 F.3d 465, 484 (5th Cir. 2001) (emphasis added); *see Rossmore House*, 269 NLRB 1176, 1177 (1984) ("It is well established that interrogation of employees is not illegal per se. Section 8(a)(1) of the Act prohibits employers only from activity which in some manner tends to restrain, coerce or interfere with employee rights."). Similarly, this Circuit allows employers to question their employees in preparation for an NLRB hearing, as long as the questions are "relevant to the charges of unfair labor practice and of sufficient probative value to justify the risk of intimidation which interrogation as to union matters necessarily entails." *NLRB v. Guild Indus. Mfg. Corp.*, 321 F.2d 108, 113 (5th Cir. 1963).

For the Board to conclude that Starbucks' requests for information about Hernandez's and Cardenas's union activity would "tend to coerce" reasonable employees, it needed to offer some on-point evidence or precedent in support. Instead, its perfunctory conclusion that Starbucks' requests for

information would chill employees' union activities fell far short of the rational explanation that the APA requires.

## CONCLUSION

Starbucks' petition for review should be granted, and the NLRB's cross-application for enforcement should be denied.

Dated: March 26, 2025

Respectfully submitted,

/s/ *Lisa S. Blatt*

JEFFREY S. HILLER
LITTLER MENDELSON, P.C.
*41 S. High Street, Ste. 3250*
*Columbus, OH 43215*

JONATHAN O. LEVINE
LITTLER MENDELSON, P.C.
*1111 E. Kilbourn Avenue, Ste. 1000*
*Milwaukee, WI 53202*

LISA S. BLATT
*Counsel of Record*
AMY MASON SAHARIA
CLAIRE R. CAHILL
TYLER J. BECKER
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*

*Counsel for Petitioner/Cross-Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, I electronically filed the Brief of Petitioner/Cross-Respondent with the United States Court of Appeals for the Fifth Circuit by using the appellate NextGen system. I certify that all participants in the case are registered NextGen users and that service will be accomplished by the appellate NextGen system.

Dated: March 26, 2025

/s/ *Lisa S. Blatt*

LISA S. BLATT

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, that the attached Brief of Petitioner/Cross-Respondent contains 11,927 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point CenturyExpd BT.

Dated:  March 26, 2025                        /s/ *Lisa S. Blatt*
                                             LISA S. BLATT