Oral Argument Not Yet Scheduled

**No. 24-60500**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## STARBUCKS CORPORATION

**Petitioner/Cross-Respondent**

v.

## NATIONAL LABOR RELATIONS BOARD

**Respondent/Cross-Petitioner**

_____

## ON PETITION FOR REVIEW AND CROSS-APPLICATION
## FOR ENFORCEMENT OF AN ORDER OF
## THE NATIONAL LABOR RELATIONS BOARD

_____

## BRIEF FOR RESPONDENT/CROSS-PETITIONER
## THE NATIONAL LABOR RELATIONS BOARD

_____

**ELIZABETH A. HEANEY**
*Supervisory Attorney*

**JARED H. ODESSKY**
*Attorney*

*National Labor Relations Board*
**1015 Half Street, SE**
**Washington, DC 20570**
**(202) 273-1743**
**(202) 273-1937**

**WILLAM B. COWEN**
   *Acting General Counsel*

**STEPHANIE CAHN**
   *Acting Deputy General Counsel*

**PETER SUNG OHR**
   *Associate General Counsel*

**RUTH E. BURDICK**
   *Deputy Associate General Counsel*

**MEREDITH JASON**
   *Assistant General Counsel*

**National Labor Relations Board**

## STATEMENT REGARDING ORAL ARGUMENT

The National Labor Relations Board believes that oral argument would assist the Court in clarifying and resolving the issues in this appeal.

# **TABLE OF CONTENTS**

**Headings**                                                                    **Page(s)**

Statement regarding oral argument.........................................................................i

Table of contents..................................................................................................ii

Table of authorities ...........................................................................................iv

Statement of jurisdiction ....................................................................................1

Statement of issue .............................................................................................1

Statement of the case.........................................................................................1

I.   The Board's findings of fact ........................................................................1

    A.   Background .............................................................................................1

    B.   Employees launch a union organizing effort at the Company's La Quinta
        store; the Union files an unfair-labor-practice charge against the
        Company ...................................................................................................2

    C.   After Hernandez and Cardenas provide affidavits, the General Counsel
        issues a complaint against the Company; the Company serves subpoenas
        on Hernandez and Cardenas........................................................................3

    D.   The judge revokes the subpoenas before granting the Company's
        renewed, narrow request for Hernandez's May 18 journal entry .................7

II.  Procedural history ........................................................................................9

III. The Board's conclusions and order .............................................................10

Standard of review .............................................................................................10

Summary of argument........................................................................................11

Argument............................................................................................................13

Substantial evidence supports the Board's finding that the Company violated Section 8(a)(1) by issuing overbroad subpoenas to Hernandez and Cardenas seeking protected information ...................................................................13

   A.  Section 8(a)(1) of the Act prohibits conduct that has a reasonable tendency to coerce employees in the exercise of their Section 7 rights .....13

   B.  An employer engages in coercive conduct by issuing overbroad subpoenas to employees seeking Section 7-protected information ...............................14

   C.  The Company's sweeping subpoena requests coerced employees by seeking protected information far beyond an evidentiary need for it ..........17

      1.  Demands for employees' communications with Board investigators........................................................................................17

         a.  The Board balanced the Company's unsupported need for employees' investigative communications against the requests' substantial interference with employees' rights ...........................17

         b.  The Board properly considered the full factual context of the requests........................................................................................23

      2.  Demands for employees' own communications ................................29

   D.  The Company's arguments regarding the Board's test are unavailing ........35

      1.  The Board applied its longstanding liability test ................................35

      2.  The Board's test aligns with the statutory text and principles of fair notice..........................................................................................37

      3.  The Company has waived its argument that the Board violated its First Amendment right to petition the government, which, in any event, is meritless ............................................................................40

Conclusion ..............................................................................................................47

## <u>TABLE OF AUTHORITIES</u>

**Headings**                                                    **Page(s)**

*BE & K Constr. Co. v. NLRB*,
   536 U.S. 516 (2002) ........................................................................ 42, 44

*Beth Isr. Hosp. v. NLRB*,
   437 U.S. 483 (1978) ................................................................................39

*Bill Johnson's Rests., Inc. v. NLRB*,
   461 U.S. 731 (1983) ..................................................................... 42, 43, 44

*Braswell Motor Freight Lines, Inc.*,
   156 NLRB 671 (1966), *enforced*,
   386 F.2d 190 (5th Cir. 1967) ..................................................................21

*Cal. Motor Transp. Co. v. Trucking, Unlmtd.*,
   404 U.S. 508 (1972) ................................................................................41

*Can-Am Plumbing, Inc. v. NLRB*,
   321 F.3d 145 (D.C. Cir. 2003) ...............................................................44

*Cent. Hardware Co. v. NLRB*,
   407 U.S. 539 (1972) ................................................................................31

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................11

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ................................................................................15

*Davis v. Maggio*,
   706 F.2d 568 (5th Cir. 1983) ........................................................... 31, 41

*Dixie Bedding Mfg. Co. v. NLRB*,
   268 F.2d 901 (5th Cir. 1959) ..................................................................26

*D.R. Horton, Inc. v. NLRB*,
   737 F.3d 344 (5th Cir. 2013) ..................................................................26

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ................................................................................41

# TABLE OF AUTHORITIES (cont'd)

**Headings**                                                          **Page(s)**

*Elec. Prods. Div. of Midland-Ross Corp. v. NLRB*,
   617 F.2d 977 (3d Cir. 1980)................................................................33

*Emery Worldwide, A.C.F. Co. v. NLRB*,
   966 F.2d 1003 (5th Cir. 1992).............................................................43

*Flex Frac Logistics LLC v. NLRB*,
   746 F.3d 205 (5th Cir. 2014).........................................................10, 11

*Flex Frac Logistics, LLC*,
   358 NLRB 1131 (2012), *enforced*,
   746 F.3d 205 (5th Cir. 2014)............................................................ 26

*In re Guess?*,
   339 NLRB 432 (2003) ........................................................................36

*In re Manno Elec., Inc.*,
   321 NLRB 278 (1996), *enforced*,
   127 F.3d 34 (5th Cir. 1997) ...............................................................45

*In-N-Out Burger, Inc. v. NLRB*,
   894 F.3d 707 (5th Cir. 2018)..............................................................10

*Interstate Mgmt. Co.*,
   369 NLRB No. 84 (2020) ...................................................................18

*Int'l Bhd. of Teamsters Loc. 947 v. NLRB*,
   66 F.4th 1294 (11th Cir. 2023)........................................................ 45

*Jencks v. United States*,
   353 U.S. 657 (1957)..............................................................................8

*Joy Silk Mills v. NLRB*,
   185 F.2d 732 (D.C. Cir. 1950) ...........................................................15

*Lechmere, Inc. v. NLRB*,
   502 U.S. 527 (1992)............................................................................39

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Headings**                                                      **Page(s)**

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)..........................................................................11

*Lowes Home Ctrs., LLC v. NLRB*,
  850 F. App'x 886 (5th Cir. 2021)....................................................40

*Martin Sprocket & Gear Co. v. NLRB*,
  329 F.2d 417 (5th Cir. 1964)...........................................................38

*Merchants Truck Line, Inc. v. NLRB*,
  577 F.2d 1011 (5th Cir. 1978)..........................................................11

*Midland Transp. Co. v. NLRB*,
  962 F.2d 1323 (8th Cir. 1992)..........................................................33

*Miller Elec. Pump & Plumbing*,
  334 NLRB 824 (2001) .....................................................................14

*Miss. Transp., Inc. v. NLRB*,
  33 F.3d 972 (8th Cir. 1994)..............................................................15

*Nash v. Fla. Indus. Comm'n*,
  389 U.S. 235 (1967)..........................................................................21

*Nat'l Tel. Directory Corp.*,
  319 NLRB 420 (1995) .....................................................................36

*NLRB v. Brookwood Furniture*,
  701 F.2d 452 (5th Cir. 1983)............................................... 14, 24, 35

*NLRB v. Chem Fab Corp.*,
  691 F.2d 1252 (8th Cir. 1982)..........................................................15

*NLRB v. Delta Gas, Inc.*,
  840 F.2d 309 (5th Cir. 1988)............................................................14

*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969)..........................................................................14

vi

# TABLE OF AUTHORITIES (cont'd)

**Headings**                                                          **Page(s)**

*NLRB v. Great W. Coca-Cola Bottling Co.*,
  740 F.2d 398 (5th Cir. 1984) ............................................................11

*NLRB v. Guild Indus. Mfg. Corp.*,
  321 F.2d 108 (5th Cir. 1963) ...........................................................39

*NLRB v. Hendel Mfg. Co.*,
  483 F.2d 350 (2d Cir. 1973) ............................................................31

*NLRB v. Me. Coast Reg'l Health Care Facilities*,
  999 F.3d 1 (1st Cir. 2021) ...............................................................31

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ................................................................ 16, 21, 23

*P.S.C. Res., Inc. v. NLRB*,
  576 F.2d 380 (1st Cir. 1978) ........................................................ 27, 29

*Pac. Molasses Co. v. NLRB*,
  577 F.2d 1172 (5th Cir. 1978) ...................................................... 14, 34

*Parsippany Hotel Mgmt. Co. v. NLRB*,
  99 F.3d 413 (D.C. Cir. 1996) ..........................................................15

*Power Sys., Inc.*,
  239 NLRB 445 (1978) ....................................................................42

*Red Food Stores, Inc. v. NLRB*,
  604 F.2d 324 (5th Cir. 1979) ..........................................................20

*Republic Aviation Corp. v. NLRB*,
  324 U.S. 793 (1945) .......................................................................39

*Retail Clerks Int'l Ass'n v. NLRB*,
  373 F.2d 655 (D.C. Cir. 1967) .................................................. 19, 22, 23

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*,
  611 F.3d 483 (9th Cir. 2010) ..........................................................44

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Headings**          **Page(s)**

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)................................................................44

*Starbucks Corp.*,
  372 NLRB No. 159, 2023 WL 8270018 (Nov. 28, 2023) ........................ 2, 3, 8, 9

*Stericycle, Inc.*,
  372 NLRB No. 113, 2023 WL 4947792 (Aug. 2, 2023) .....................................26

*Stern Produce Co. v. NLRB*,
  97 F.4th 1 (D.C. Cir. 2024) .....................................................................9

*Tex. Indus., Inc. v. NLRB*,
  336 F.2d 128 (5th Cir. 1964)...................................... 14, 19, 20, 22, 23

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004)................................................................44

*T-Mobile USA, Inc. v. NLRB*,
  865 F.3d 265 (5th Cir. 2017).................................................................31

*Tracy Toyota*,
  372 NLRB No. 101, 2023 WL 4404469 (2023)...................................36

*Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union, Loc. 705 v. NLRB*,
  820 F.2d 448 (D.C. Cir. 1987) ..................................................... 43, 44

*TRW-United Greenfield Div. v. NLRB*,
  637 F.2d 410 (5th Cir. 1981)................................................................34

*UNF W., Inc. v. NLRB*,
  844 F.3d 451 (5th Cir. 2016)...................................................... 25, 28, 31

*United Nurses Assns. of Cal. v. NLRB*,
  871 F.3d 767 (9th Cir. 2017)......................................... 33, 35, 43, 46

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33, 37 (1952)...........................................................................40

## **TABLE OF AUTHORITIES (cont'd)**

**Headings**                                                    **Page(s)**

*Veritas Health Servs. v. NLRB*,
   671 F.3d 1267 (D.C. Cir. 2012) ..............................................14

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ................................................... 38,  40

*Wright Elec.*,
   327 NLRB 1194 (1999), *enforced*,
   200 F.3d 1162 (8th Cir. 2000) ................................... 15, 16, 36

*Wright Elec., Inc.*,
   200 F.3d 1162 (8th Cir. 2000) ........................... 15, 34, 37, 46

**Statutes**                                                    **Page(s)**
National Labor Relations Act, as amended
   (29 U.S.C. § 151 et seq.)

Section 7 (29 U.S.C. § 157) ..............................................13

Section 8(a)(1) (29 U.S.C. § 158(a)(1)) ...............................13

Section 8(c) (29 U.S.C. § 158(c)) .......................................38

Section 10(a) (29 U.S.C. § 160(a)) .......................................1

Section 10(e) (29 U.S.C. § 160(e)) .......................................1

Section 10(f) (29 U.S.C. § 160(f)) ........................................1

Section 11 (29 U.S.C. § 161) ..............................................4


**Rules**                                                       **Page(s)**

Fed. R. App. P. 28(a)(8)(A) ........................................ 31, 41

## **TABLE OF AUTHORITIES (cont'd)**

**Regulations**                                                          **Page(s)**

29 C.F.R. § 102.31 ...................................................................................4

29 C.F.R. § 102.46 .................................................................................41

29 C.F.R. § 102.118........................................................... 8, 21, 22, 29, 39

## STATEMENT OF JURISDICTION

This case is before the Court on Starbucks Corporation (the Company)'s petition for review, and the National Labor Relations Board's cross-application to enforce, a final Board order issued September 6, 2024 (373 NLRB No. 101). The Board had jurisdiction over the proceeding below pursuant to Section 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a). The Court has jurisdiction under Section 10(e) and (f) of the Act, as the Company transacts business in this Circuit. 29 U.S.C. § 160(e), (f). The petition and cross-application are timely, given that the Act provides no time limits for such filings.

## STATEMENT OF ISSUE

Whether substantial evidence supports the Board's finding that the Company violated Section 8(a)(1) of the Act when it issued overbroad subpoenas to employees Andrea Hernandez and Jazmine Cardenas seeking their confidential, Section 7-protected information.

## STATEMENT OF THE CASE

## I.     THE BOARD'S FINDINGS OF FACT

### A.     Background

The Company operates retail coffee stores throughout the United States, including the store located at 79845 Highway CA-111, La Quinta, California (the

La Quinta store).  (ROA.503-04; ROA.26).[1]  Matthew Burton has been the store's manager since April 2022.  (ROA.504; ROA.53-54.)  Andrea Hernandez has worked at the store since 2014, most of that time as a shift supervisor.  (ROA.504; ROA.27, 48.)  Jazmine Cardenas worked at the store from May 2016 to September 2022, variously as a barista and as a shift supervisor, as assigned by the store manager.  (ROA.55, 74.)  *Starbucks Corp.*, 372 NLRB No. 159, 2023 WL 8270018, at *2 (Nov. 28, 2023).

### B.    Employees Launch a Union Organizing Effort at the Company's La Quinta Store; The Union Files an Unfair-Labor-Practice Charge Against the Company

In December 2021, Hernandez, Cardenas, and other employees began an effort to organize a union with Starbucks Workers United (the Union) at the La Quinta store.  (ROA.504; ROA.30-31, 44.)  The Union petitioned for a Board-conducted representation election, which took place on May 27, 2022.  372 NLRB No. 159, 2023 WL 8270018, at *2 n.1.  On the same day as the election, the Union filed an unfair-labor-practice charge against the Company (Board Case No. 21-CA-296716), alleging that, in the lead-up to the election, Burton had instructed unspecified employees that there should be "no talking" about the Union while working.  (ROA.504; ROA.344.)

---

[1] "ROA" citations are to the record on appeal.  Citations preceding a semicolon are to the Board's findings; citations after are to supporting record evidence.  "Br." cites are to the Company's opening brief.

Following the election, the tally of ballots revealed that a majority of eligible employees voted in favor of union representation. (ROA.504.) Accordingly, on July 5, the Board certified the Union as employees' bargaining representative. 372 NLRB No. 159, 2023 WL 8270018, at *2 n.1.

### C.    After Hernandez and Cardenas Provide Affidavits, the General Counsel Issues a Complaint Against the Company; The Company Serves Subpoenas on Hernandez and Cardenas

In the course of the Board's investigation of the Union's May 27 charge, Hernandez and Cardenas each provided testimony to the Board in the form of signed affidavits. (ROA.504; ROA.42-43.) Based on the evidence gathered in the investigation, the Regional Director for the Board's Region 21, acting on behalf of the General Counsel, issued a complaint against the Company on July 14, alleging that, in a mandatory meeting on about May 12, Burton told unspecified employees that they are not allowed to talk about the Union while working or in the store, with partners at other stores, or via methods besides phone. (ROA.504; ROA.350.) The complaint further alleged that, on May 18, Burton told unspecified employees that they can only talk about the Union on their break or when they are clocked out. (ROA.504; ROA.351.) The Regional Director scheduled a hearing for October 11, which was assigned to Administrative Law Judge Jeffrey D. Wedekind. (ROA.504; ROA.353.) Neither Cardenas nor Hernandez were named in the complaint. (ROA.504; ROA.348-53.)

On September 14, several weeks in advance of the hearing, the Company requested the issuance of identical subpoenas duces tecum to Hernandez and Cardenas. (ROA.504; ROA.37, 165-94.) Consistent with the Board's standard subpoena process, the Regional Director received the Company's subpoenas, which were then issued by the Board.[2]

The subpoenas requested that each of the two employees provide the following documents:

1. All audio and/or video recordings of any [of the Company's] current or former managers, supervisors, leaders or agents at the La Quinta Store relating to union organizing at [the Company's] La Quinta stores, and/or the allegations contained in the Complaint. In addition, if a written transcript of such a recording has been prepared, also provide copies of the same.

2. Communications with the media concerning Your employment with [the Company], the Union, and/or the allegations contained in the Complaint.

3. Documents provided by You to the Union and/or Region 21 concerning the allegations contained in the Complaint, including but not limited to Documents concerning the conduct of managers, supervisors, leaders or agents of [the Company].

---

[2] The Board issues subpoenas requested by parties in a nondiscretionary manner, as provided for by Section 11(1) of the Act and Section 102.31 of the Board's Rules and Regulations. 29 U.S.C. § 161 ("The Board . . . shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring . . . the production of any evidence . . . requested in such application."); 29 C.F.R. § 102.31 ("The Board . . . will, on the written application of any party, issue subpoenas requiring . . . the production of any evidence . . . .").

4.  Communications between You and the Union and/or Region 21 concerning the allegations contained in the Complaint, including but not limited to Communications concerning conduct of current or former managers, supervisors, leaders or agents of [the Company].

5.  All statements, declarations, or affidavits, in any form, and any drafts thereof that You have prepared or that have been taken from you by [B]oard personnel, a representative of the Union, or any other person relating in any way concerning the allegations contained in the Complaint.

6.  Communications with current and/or former employees of [the Company] concerning any Communication between Store Manager Matt Burton and other partners at the La Quinta store or other [Company] locations.

7.  Communications with current and/or former employees of [the Company] concerning violations by employees of [Company] policies at [the Company's] La Quinta store or other [Company] locations.

8.  Documents, Communications, and Recordings that contain any information concerning any act or failure to act alleged in the Complaint or the credibility of any witness or potential witness in this proceeding.

9.  All Documents, including electronically stored information such as emails, voicemails, and text messages, sent by you or received by you from any [Board] official, employee, or Board personnel from Region 21.

10. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing Your employment with [the Company].

11. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing your presence in the La Quinta Store on May 12, 2022.

5

12. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing your presence in the La Quinta store on May 18, 2022.

13. All journals or notebooks You kept related to Your employment at [the Company's] La Quinta store.

(ROA.503; ROA.176-78, 191-93.)[3]  The definitions and instructions section of the subpoenas stated that the recipient was not required to provide confidential witness questionnaires, confidential witness affidavits, and other statements provided to the Board.  (ROA.504; ROA.170-73, 185-88.)[4]

Following the service of the subpoenas, the General Counsel and the Union each filed petitions to revoke them.  (ROA.504; ROA.205-14.)  On September 27, the Union filed a second unfair-labor-practice charge—the subject of the present case—contending that the Company's issuance of the subpoenas to Hernandez and Cardenas demanding information and communications regarding their union and other protected concerted activity violated the Act.  (ROA.503; ROA.100.)

---

[3] The subpoenas also sought "Documents received from [the Company] during Your employment at [the Company]."  That request is not at issue in this case. (ROA.503 n.5.)

[4] Another instruction stated that the recipient was required to "redact the name of any [Company] hourly employee, or information from which the identity of any [Company] hourly employee could be discerned, from any document responsive to the requests where failing to do so would result in disclosure of the employee's sentiments toward the Union . . . ."  (ROA.176, 191.)  However, the instruction further stated that it did not apply to Hernandez and Cardenas.  (ROA.176, 191.)

**D.    The Judge Revokes the Subpoenas Before Granting the Company's Renewed, Narrow Request for Hernandez's May 18 Journal Entry**

On October 7, Judge Wedekind granted the petitions to revoke the subpoenas.  (ROA.504; ROA.245-46.)  Overall, he determined that the subpoena requests were "grossly overbroad and [sought] information that [was] not reasonably relevant" to the complaint allegations or the Company's defenses.  (ROA.504; ROA.245-46.)  He further emphasized that under well-established Board policy the Company was "not entitled to subpoena" employees' communications with Board investigators.  (ROA.245.)

Still, Judge Wedekind acknowledged that "some of the subpoena requests may encompass some relevant information," such that the Company's need for the information could outweigh employees' right to confidentiality in their protected activity.  (ROA.245.)  Thus, he indicated that the Company could renew its request for any notes or journal entries specifically related to Burton's alleged unlawful statements after Hernandez and Cardenas testified on direct examination.  (ROA.504; ROA.245.)  Judge Wedekind also reminded the Company that, following Hernandez's and Cardenas's direct testimony, the Board's regulations allowed it to request copies of certain statements that the employees had provided

to Board investigators.[5]  (ROA.245 n.3.)

During the hearing, Cardenas testified that Burton told her on May 12 that employees were not allowed to talk about the Union while on the floor and clocked in, or with employees from other stores who visited the La Quinta store.  *Starbucks Corp.*, 372 NLRB No. 159, 2023 WL 8270018, at *2.  In addition, Hernandez testified that Burton told her on May 18 that employees could only talk about the Union if they were on a break or clocked out.  *Id.*  Hernandez also testified that, at the advisement of the Union, she regularly took notes related to her interactions at work.  *Id.*, at *2 & n.23.  The Company subsequently renewed its request for Hernandez's notes specifically from May 18, which Judge Wedekind ordered to be provided.  (ROA.504.)  *Id.*, at *2 n.23.  The notes from that day did not reflect that Burton had made the statement alleged in the complaint.  (ROA.504; ROA.387-89.)  *Id.*, at *2.

On December 6, Judge Wedekind issued a recommended decision dismissing the complaint allegations related to Burton's alleged statements on May 12 and 18.  *Id.*, slip op. at 3-4.  In reaching his decision, Judge Wedekind chose not

---

[5] As detailed below (pp. 22-23), under the Board's regulations, after a witness called by the General Counsel or by the charging party has testified in an unfair-labor-practice hearing, the respondent may request the production of any statement of such witness in the possession of the General Counsel which relates to the subject matter as to which the witness has testified (a so-called *Jencks* statement). 29 C.F.R. § 102.118(e) & (g); *cf. Jencks v. United States*, 353 U.S. 657, 672 (1957).

to credit the accounts of Hernandez and Cardenas, pointing primarily to contradictory testimony from Burton and others. *See id.* As further support for his decision not to credit Hernandez specifically, Judge Wedekind observed that her testimony was "not supported by her own notes of the May 18 meeting." *Id.*, slip op. at 4. The recommended decision was subsequently adopted by the Board. *Id.*, slip op. at 1.

## II.    PROCEDURAL HISTORY

Based on the Union's second, September 27 unfair-labor-practice charge, the Board's General Counsel issued a complaint alleging, in relevant part, that the Company violated Section 8(a)(1) of the Act by issuing overbroad subpoenas to Hernandez and Cardenas seeking protected information, and Section 8(a)(4) and (1) of the Act by targeting them as recipients because of their participation as affiants and witnesses before the Board.[6] (ROA.506; ROA.116-22, 142.) After a hearing, Administrative Law Judge Amita Baman Tracy issued a recommended decision and order concluding that the Company violated Section 8(a)(1) as alleged. (ROA.503-11.) However, Judge Tracy dismissed the allegation as to Section 8(a)(4) and (1), finding insufficient evidence that the Company knew of

---

[6] A violation of Section 8(a)(4) "automatically results in a derivative violation of Section 8(a)(1)." *Stern Produce Co. v. NLRB*, 97 F.4th 1, 11 n.3 (D.C. Cir. 2024).

Hernandez's and Cardenas's activity prior to issuing the subpoenas. (ROA.508-09.)

## III.    THE BOARD'S CONCLUSIONS AND ORDER

On September 6, 2024, the Board (Members Kaplan, Prouty, and Wilcox) issued a Decision and Order adopting with minor modification Judge Tracy's recommended decision. (ROA.501.) The Board ordered the Company to cease and desist from issuing overbroad subpoenas seeking protected information to employees, and from in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act. (ROA.501, 510.) It also ordered the Company to post a remedial notice. (ROA.501-02, 510.)

## STANDARD OF REVIEW

Judicial review of the Board's decisions is "limited and deferential." *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707, 714 (5th Cir. 2018). The Court will accept the Board's unfair-labor-practice findings "if they have a reasonable basis in the law and are not inconsistent with [the Act]," and the Board's findings of fact "so long as they are supported by 'substantial evidence.'" *In-N-Out*, 894 F.3d at 714. Substantial evidence means that which is "sufficient for a reasonable mind to accept as adequate to support a conclusion." *Flex Frac Logistics LLC v. NLRB*, 746 F.3d 205, 207 (5th Cir. 2014). "Only in the most rare and unusual cases will an appellate court conclude that a finding of fact made by the [Board] is not

10

supported by substantial evidence." *Id.* at 208 (quoting *Merchants Truck Line, Inc. v. NLRB*, 577 F.2d 1011, 1014 n.3 (5th Cir. 1978)).

Because the question of whether an employer coercively sought protected information from employees is "one of fact," "its primary determination rests with the Board." *NLRB v. Great W. Coca-Cola Bottling Co.*, 740 F.2d 398, 404 (5th Cir. 1984). This Court "will not disturb" a finding of coercion supported by substantial evidence. *Id.*[7]

## SUMMARY OF ARGUMENT

Substantial evidence supports the Board's finding that the Company violated Section 8(a)(1) of the Act when it issued overbroad subpoenas to Hernandez and Cardenas seeking their confidential, Section 7-protected information in advance of the unfair-labor-practice hearing.

First, the Board reasonably found that the Company's pre-hearing demand for Hernandez's and Cardenas's communications with Board investigators unjustifiably interfered with employees' right to confidentiality in their Section 7 activity and their Section 7 right of access to the Board, which, in turn, interfered

---

[7] The Company's passing reference (Br. 26) to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), is misplaced. *Loper* overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which had held that courts were obligated to adopt permissible agency interpretations of ambiguous statutory language. It did not alter the standard of review for this case, which involves factual findings and the application of settled law.

with the Board's capacity to enforce employees' statutory rights.  Contrary to the Company's assertions, the Board considered the Company's interest in the information.  But, in its well-established view, an employer's need to prepare its defense is sufficiently satisfied by its right to question employees in preparation for a hearing, to review the relevant portions of employees' statements to Board investigators after their direct testimony, and to seek a continuance of the hearing if needed.  Since an employer's pre-hearing request for investigative communications from employees is unwarranted, the Board concluded that the Company's demand for such communications unduly restrained employees in the exercise of their Section 7 rights.

Second, the Board reasonably determined that the Company's requests for Hernandez's and Cardenas's own communications, including communications about their union and other protected concerted activity, likewise interfered with employees' Section 7 right to confidentiality in such activity.  The Board weighed this important right against the Company's need to defend itself against allegations that, on two specific dates, Burton made certain statements in employee meetings. In doing so, it found that the Company's far-reaching requests for employees' information extended well beyond its needs.  Consequently, the Board appropriately viewed the Company's intrusive requests as coercive to a reasonable employee.

The Company's arguments for sidestepping this clear-cut application of settled principles fall flat. The Board broke no new ground in applying its usual test balancing employees' Section 7 rights and an employer's legitimate interest in information for its defense. This longstanding test comports with both statutory text and due process. Finally, because the Company's subpoena requests had an illegal objective, the Board also in no way interfered with the Company's First Amendment right to petition the government.

## ARGUMENT

### SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE COMPANY VIOLATED SECTION 8(a)(1) BY ISSUING OVERBROAD SUBPOENAS TO HERNANDEZ AND CARDENAS SEEKING PROTECTED INFORMATION

**A.     Section 8(a)(1) of the Act Prohibits Conduct that Has a Reasonable Tendency to Coerce Employees in the Exercise of their Section 7 Rights**

Section 7 of the Act guarantees that "employees shall have the right . . . to form, join, or assist labor organizations," to bargain collectively, to act concertedly "for mutual aid or protection," and also to refrain from any or all of these activities. 29 U.S.C. § 157. Section 8(a)(1) of the Act enforces the guarantees of Section 7 by making it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. 29 U.S.C. § 158(a)(1).

Employer conduct violates Section 8(a)(1) if, considering the totality of the circumstances, it would reasonably tend to coerce employees in the exercise of their statutory rights. *NLRB v. Delta Gas, Inc.*, 840 F.2d 309, 311 (5th Cir. 1988). That objective test requires neither actual coercion nor unlawful motive. *NLRB v. Brookwood Furniture*, 701 F.2d 452, 459 (5th Cir. 1983); *Miller Elec. Pump & Plumbing*, 334 NLRB 824, 824-25 (2001). The Board evaluates employer statements from the perspective of employees who are in a position of "economic dependence" and perceive threatening implications "that might be more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969).

## B.     An Employer Engages in Coercive Conduct by Issuing Overbroad Subpoenas to Employees Seeking Section 7-Protected Information

It is "well settled" that Section 7 affords employees not only a right to engage in the aforementioned activity, but also a right to confidentiality in that activity. *Veritas Health Servs. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (quotation omitted). "[T]his right to privacy is a right necessary to full and free exercise of the organizational rights guaranteed by the [Act]." *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172, 1182 (5th Cir. 1978). It follows that an employer's uncircumscribed efforts to obtain information about employees' exercise of their Section 7 rights constitutes interference and coercion within the meaning of Section 8(a)(1). *See Tex. Indus., Inc. v. NLRB*, 336 F.2d 128, 133 (5th Cir. 1964).

14

The fundamental premise militating against employer surveillance of protected activity is that employees' knowledge that their activity is being subjected to scrutiny will tend to "chill[]" its exercise. *See Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 420 (D.C. Cir. 1996). Such conduct is unlawful "'because it could inhibit . . . employees' right to pursue union activities untrammeled by fear of possible employer retaliation.'" *Miss. Transp., Inc. v. NLRB*, 33 F.3d 972, 978 (8th Cir. 1994) (quoting *NLRB v. Chem Fab Corp.*, 691 F.2d 1252, 1258 (8th Cir. 1982)). Thus, since the inception of the Act, the Board has prohibited conduct that leads employees to believe that their employer is undertaking efforts to monitor their involvement in protected activity, as the risk of disclosure and of potential retaliation is a powerful deterrent to even considering union involvement. *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 230 (1938).

The potential chilling effect of an employer's investigation into Section 7 conduct persists when the request occurs in the context of preparation for a Board unfair-labor-practice proceeding. *See Joy Silk Mills v. NLRB*, 185 F.2d 732, 743 (D.C. Cir. 1950) ("The fact that the fruits of the [investigation] are to be used in preparation for a hearing does not make [it] any less coercive."). Even under these circumstances, "the Board zealously seeks to protect the confidentiality interests of employees." *See Wright Elec.*, 327 NLRB 1194, 1195 (1999), *enforced*, 200 F.3d 1162 (8th Cir. 2000). As the Supreme Court has recognized, "due to the peculiar

15

character of labor litigation," where "the employer, by virtue of the employment relationship, may exercise intense leverage" over employees, employee witnesses "are especially likely to be inhibited by fear of the employer's . . . capacity for reprisal and harassment." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240 (1978) (quotations omitted).

Still, the Board is sensitive to the employer's needs when it is the respondent in an unfair-labor-practice proceeding. When an employer subpoenas employees in a purported effort to gather information for its defense, the Board evaluates the possibility of coercion using a straightforward balancing test. *See Wright Elec.*, 327 NLRB at 1195. On the one hand, it will decline to find coercion if the employer's need for the requested information to prepare its defense outweighs employees' confidentiality interests. *See id.* This outcome recognizes that, although employees' confidentiality interests are weighty, employees are less likely to be coerced by an employer's pursuit of information about their protected activity if the request is limited and necessary to the employer's defense. On the other hand, when an employer issues subpoenas demanding more protected information from employees than needed, employees are more likely to view the requests as coercive. Thus, the Board will find a violation of Section 8(a)(1). *See id.*

16

**C.    The Company's Sweeping Subpoena Requests Coerced Employees by Seeking Protected Information Far Beyond an Evidentiary Need for It**

The Board found that the Company "sought Section 7 protected information" in each of the offending subpoena requests.  (ROA.506.)  Unless the Company's need for the information outweighed employees' confidentiality interests, those requests thus violated Section 8(a)(1).

In weighing the Company's relative need for the information, the Board divided the requests into two categories:  (1) demands for employees' communications with Board investigators (requests 3, 4, 5, and 9), and (2) demands for employees' own communications (requests 1, 2, 6, 7, 8, 10, 11, 12, and 13).  (ROA.506-07.)  As to both categories, the Board reasonably determined that the Company's need for the information was insufficient to extinguish the coercive effect of seeking employees' Section 7-protected information.  (ROA.506-08.)

**1.  Demands for employees' communications with Board investigators**

**a.  The Board balanced the Company's unsupported need for employees' investigative communications against the requests' substantial interference with employees' rights.**

The Board found that the following subpoena requests—which sought Hernandez's and Cardenas's affidavits and communications with Board personnel—were overbroad and thus coercive, in violation of Section 8(a)(1):

17

3. Documents provided by You to the Union and/or Region 21 concerning the allegations contained in the Complaint, including but not limited to Documents concerning the conduct of managers, supervisors, leaders or agents of [the Company].

4. Communications between You and the Union and/or Region 21 concerning the allegations contained in the Complaint, including but not limited to Communications concerning conduct of current or former managers, supervisors, leaders or agents of [the Company].

5. All statements, declarations, or affidavits, in any form, and any drafts thereof that You have prepared or that have been taken from you by [B]oard personnel, a representative of the Union, or any other person relating in any way concerning the allegations contained in the Complaint.

. . .

9. All Documents, including electronically stored information such as emails, voicemails, and text messages, sent by you or received by you from any [Board] official, employee, or Board personnel from Region 21.

(ROA.503, 506 & n.11; ROA.176-77, 191-92.)

The Company does not dispute that these requests, on their face, sought Section 7-protected documents.[8]  Indeed, employees' affidavits and other communications with Board investigators, which each of the above requests specifically sought, undoubtedly fall within the protection of Section 7.  *See Interstate Mgmt. Co.*, 369 NLRB No. 84, slip op. at 2 (2020) ("[E]mployees have a

---

[8] The Company's argument (Br. 52-53) that the requests did not seek Section 7-protected information is based solely on its claim that the subpoena instructions wholly inverted the meaning of the requests' plain text.  The Board reasonably rejected that argument, as discussed below (pp. 25-27).

Section 7 right to provide evidence to the Board and to cooperate in Board . . .

investigations without interference.").

In finding that these requests violated Section 8(a)(1), the Board relied on a

long line of cases balancing an employer's need for information and the burden on

employee rights when an employer requests communications between employees

and Board investigators. (ROA.506-07.) In the Board's experience, the

employer's need for such information *before* a hearing has proven limited, and the

potential chill to employees' exercise of their rights severe. Thus, it is now well

established that an employer's "mere request" that employees produce such

statements before a hearing is "a violation of the Act." *Retail Clerks Int'l Ass'n v.*

*NLRB*, 373 F.2d 655, 658 (D.C. Cir. 1967); *see also Tex. Indus.*, 336 F.2d at 133

("[B]y seeking copies of these statements, the company . . . violated § 8(a)(1).").

The weighty employee-rights interest in such cases is threefold. First, an

employer's request for employees' communications with the Board directly

interferes with the rights of employees in receipt of the request. Because an

employee is engaged in Section 7-protected activity when sharing information with

the Board during an investigation, an employer's attempt to uncover those

communications threatens an employee's accompanying Section 7 right to

confidentiality in that activity. Within the asymmetric employer-employee

relationship, the request, independent of disclosure, is sufficient to obstruct the

19

right of confidentiality.  As this Court has explained, "[i]t is no answer to say that the employee is free to refuse to furnish his employer" with requested information. *Tex. Indus.*, 336 F.2d at 134.  "A refusal under such circumstances would be tantamount to an admission that the [information] contained matter which the employee wished to conceal from the employer." *Id.*

Second, an employer's request for employees' communications with the Board also directly restrains other employees' Section 7 right of Board access by discouraging them from reporting accurate information to the Board.  In the words of this Court, "[i]t would seem axiomatic that if an employee knows his statements to Board agents will be freely discoverable by his employer, he will be less candid in his disclosures." *Tex. Indus.*, 336 F.2d at 133.  Put another way, "[n]o employee" would "risk forfeiting" goodwill or job security "to reveal information prejudicial to his employer when the employer can easily find out that he has done so." *Id.*; *see Red Food Stores, Inc. v. NLRB*, 604 F.2d 324, 326 (5th Cir. 1979) (discussing chilling effect of possibility of disclosure on candor of employee witnesses).

Finally, an employer's request for employees' communications with the Board interferes indirectly with employees' Section 7 rights by compromising the efficacy of Board investigations.  *See Tex. Indus.*, 336 F.2d at 134 ("vindication of employee rights under the Act" depends on the Board securing "supporting

20

statements from employees"); *Braswell Motor Freight Lines, Inc.*, 156 NLRB 671, 675 (1966) (employer's pre-hearing request for employee statements to Board "interfere[s] with the Board's efforts to secure vindication of employees' statutory rights and thus interfere[s] with the enjoyment of such rights"), *enforced*, 386 F.2d 190 (5th Cir. 1967).  The Supreme Court has repeatedly recognized that the Board's capacity to conduct effective investigations into unfair-labor-practice charges depends on its ability to collect statements from employees and other individuals with knowledge of the underlying facts.  *See Robbins Tire*, 437 U.S. at 236 (Board relies principally on confidential affidavits to prove its case); *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 238 (1967) (to ensure effectuation of the Act, Congress intended that "all persons with information about [unfair labor] practices" must be "completely free from coercion against reporting them to the Board").

Charged with protecting employees' right to engage in protected activity, including employees' participation in Board processes, without employer interference, the Board has developed strict procedures to safeguard the confidentiality of employees' communications with Board investigators.  Principally, Section 102.118(a) of the Board's rules and regulations requires a party seeking any contents from the General Counsel's investigative file to obtain written consent from the General Counsel.  29 C.F.R. § 102.118(a).  The request "must

identify the documents to be produced, the nature of the pending proceeding, and the purpose to be served by the production of the documents." *Id.* It is undisputed that the Company bypassed this procedure here and instead sought these documents directly from the employees.

At the same time, the Board recognizes that an employer must be able to present a defense. The Board's procedures amply accommodate that interest. For example, prior to the hearing, an employer is privileged to "question[] the employees about the specific matters alleged in the complaint." *Tex. Indus.*, 336 F.2d at 134. Because of this, when an employer has "been served with a complaint framing the issues for trial," a "blanket request for copies of the statements employees ha[ve] given the Board"—as the Company made here—is an "indiscriminate inquir[y] which exceed[s] the necessities of the situation." *Id.* at 133.

Moreover, at the hearing itself, the employer "may demand the statements of employees who testify." *Retail Clerks*, 373 F.2d at 658. Specifically, pursuant to Section 102.118(e) of the Board's regulations, a party may request the production of an employee statement from the investigative file after that employee has been "called by the General Counsel or by the Charging Party [and] has testified" in an unfair-labor-practice hearing. 29 C.F.R. § 102.118(e)(2). Even then, however, the moving party is only entitled to the portions of the affidavit that

"relate to the subject matter of the testimony of the witness." *Id.* Thus, an employer requesting an affidavit for purposes of cross-examination is not necessarily entitled to see the entire affidavit that the witness gave during the Board's investigation. *See Robbins Tire*, 437 U.S. at 241 n.21. However, if circumstances warrant, a party may obtain a continuance to meet surprise testimony." *Retail Clerks*, 373 F.2d at 658

All in all, the Board's approach of finding pre-hearing requests for employees' communications with Board personnel to be coercive strikes an appropriate balance between these employee and employer interests: it enforces employees' right to be free of employer requests that have an obvious coercive tendency, but "do[es] not severely handicap the employer's preparation for a hearing." *Id.* Notably, the Supreme Court, aware of the "obvious risk[s]" associated with unfettered discovery of investigative communications, has upheld the Board's "longstanding rule against prehearing disclosure of [such] statements." *Robbins Tire*, 437 U.S. at 242-43.

### b. The Board properly considered the full factual context of the requests.

Here, the Board examined the Company's broad requests for employees' communications with Board investigators and found no reason to depart from the balancing analysis it has applied to such requests in past cases. (ROA.506-07.) *See Tex. Indus.*, 336 F.2d at 134 ("It may be that under some circumstances a

showing could be made that an employer would be justified in obtaining copies of employees' statements. . . . [S]uch circumstances are not presented here."). The Company accuses the Board of failing to consider "relevant factors" unique to this case that purportedly lessened the coerciveness of its requests for highly sensitive communications. (Br. 49-56.) To the contrary, the Board considered the factual context of the Company's requests and still found them to be coercive from the perspective of a reasonable employee.

Perhaps the most pertinent contextual detail is that "Hernandez and Cardenas participated in the Board processes without informing any managers, supervisors, or attorneys" at the Company. (ROA.507.) In other words, they "attempted to keep their activity hidden [from the Company] other than the knowledge that they were union supporters." (ROA.507.) Thus, "[o]n the eve of trial, when they received such expansive and overbroad subpoenas," the Board found that a reasonable employee who had made efforts to conceal their Board activity from their employer would objectively "be chilled." (ROA.507.)[9] Adding to the coercion was that the Company's subpoenas asked for items that would be in the General Counsel's possession, and, as the Board noted, the Company did not

---

[9] While the Board found insufficient evidence that the Company had knowledge of the employees' Board activity prior to issuing the subpoenas (ROA.508-09), as is required by Section 8(a)(4), it is the impression of the reasonable employee, not the intent of the employer, that supports a finding of coercion under Section 8(a)(1). *See Brookwood Furniture*, 701 F.2d at 459.

24

seek the General Counsel's permission before requesting these items, as it was required to do.  (ROA.507.)

Meanwhile, the Company claims that, despite its multiple demands for the two employees' communications with Board investigators, the instructions it provided in a separate part of the subpoena were sufficient to sanitize its requests. (Br. 52.)  Those instructions indicated that the recipient was not required to turn over confidential witness questionnaires, confidential witness affidavits, and other statements provided to the Board.  (ROA.170-73, 185-88.)  To be sure, the context in which a statement is made can influence its "reasonable import" for the recipient.  *UNF W., Inc. v. NLRB*, 844 F.3d 451, 458 (5th Cir. 2016).  But, as the Board reasonably found, the instructions did not relieve the Company's requests of their coercive effect.  Indeed, the requests plainly sought the precise materials the Company claimed to not be asking for:  "Documents provided by You to . . . Region 21 concerning the allegations contained in the Complaint," "Communications between You and . . . Region 21 concerning the allegations contained in the Complaint," "All statements, declarations, or affidavits, in any form, and any drafts thereof that You prepared or that have been taken from You by [B]oard personnel," and "All Documents . . . sent by you or received by you from any [Board] official, employee, or Board personnel from Region 21."  (ROA.170-73, 185-88.)  As the Board explained, a reasonable employee in receipt of

subpoena requests accompanied by directly contradictory instructions would find the instructions "confusing" at best. (ROA.506.)

The Board was correct to construe any ambiguity concerning the reach of the Company's subpoena requests and its accompanying instructions against the Company. *Cf. Flex Frac Logistics, LLC*, 358 NLRB 1131, 1132 (2012) (construing ambiguity in work rule against the employer who promulgated the rule), *enforced*, 746 F.3d 205 (5th Cir. 2014). After all, "[i]f the onus were on the employee" to clarify whether an ambiguous request encompassed protected Board activity, the employee "would effectively be required to disclose" that he had engaged in such activity—"a situation with an obvious chilling potential." *Stericycle, Inc.*, 372 NLRB No. 113, 2023 WL 4947792, at *16 n.21 (Aug. 2, 2023). Consequently, the Board found that the instructions could not expunge the unlawfulness of the Company's requests. (ROA.506.) *Cf. D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 363-64 (5th Cir. 2013) ("use of seemingly incompatible language" requiring arbitration of "any legal claims" while preserving employee's right to file charge with the Board "was not enough to save" requirement from being coercive); *Dixie Bedding Mfg. Co. v. NLRB*, 268 F.2d 901, 907 (5th Cir. 1959) ("The fact that an alert and informed employee could invoke [the contract's right-to-work] proviso . . . does not detract from the coercive effect of [the union-security] provision in the contract.").

In response, the Company asserts that "[d]efinitions codifying exceptions" are "common in discovery requests" to avoid repetition. (Br. 52.) The Company's reliance on common civil litigation practices is inapposite. It is well recognized that an employer's "position of control over [employees'] livelihoods mandates protection that is not usually necessary in ordinary litigation." *P.S.C. Res., Inc. v. NLRB*, 576 F.2d 380, 386-87 (1st Cir. 1978). Moreover, the Company's purported "exceptions" were anything but. As already established, far from carving out some subset of documents, they directly contradicted the bulk of the requests. The Company offers no support for the idea that litigants commonly make requests that, swallowed whole by their exceptions, are essentially meaningless. Nor does the Company even attempt to explain why a reasonable employee would know what is common or uncommon in litigation.

The other "relevant factors" identified by the Company also did nothing to temper the requests' coercive effect.[10] First, the Company says that "there was no possibility" that witness affidavits would be disclosed because they "are held in strict confidence by the Board." (Br. 55.) The Company makes no effort to explain how employees' perception of a request that they turn over their own affidavits and communications with Board investigators would be affected by how

---

[10] Far from "context-specific" details (Br. 56), these factors also arise in every case in which employers request affidavits from employees. Accordingly, they did not require special consideration in this case.

27

the Board would hypothetically respond to that same request. If anything, to a reasonable employee, the fact that the Board would not have disclosed these documents makes it even *more* coercive that the Company bypassed the Board to demand the documents directly from employees.

Second, the Company argues that the Board "failed to consider" that its procedures offer "a ready process for revoking any overbroad or improper subpoena requests." (Br. 56.) Setting aside whether a reasonable employee would be familiar with the revocation procedure, there is no reason that an employee would view an employer's subpoena request as any less coercive because, at a later time, other parties might successfully move to revoke it. *See UNF W.*, 844 F.3d at 458 (coercive effect measured by contemporaneous context); *id.* at 458-59 (later action *by the employer* may, under strict circumstances, remedy coercive effect of its earlier conduct).

Finally, the Company claims that the Board "failed to consider that Hernandez and Cardenas already were preparing to testify" at the hearing, "meaning that they already were prepared for [the Company] to receive copies of their witness affidavits following their testimony and be cross-examined on every line of those affidavits." (Br. 55-56.) This claim assumes too much. Again, an affidavit can only be disclosed upon proper motion, after the affiant has been "called by the General Counsel or by the Charging Party [and] has testified." 29

C.F.R. § 102.118(e)(2).  Even then, the moving party is only entitled to the portions

of the affidavit that "relate to the subject matter of the testimony of the witness."

*Id*.  In addition, "[t]he danger of reprisal" from prehearing disclosure of employee

statements "is not vitiated" merely because an employee plans to testify at the

hearing.  *P.S.C. Res.*, 576 F.2d at 387.  "If the employer had access to the statement

before [the hearing], [it] could effectively discourage the employee from testifying

and thus frustrate enforcement of the Act."  *Id.*

Accordingly, substantial evidence supports the Board's finding that the

Company's subpoena requests (3, 4, 5, and 9) violated Section 8(a)(1) by

unnecessarily seeking employees' protected communications with the Board.

### 2.  Demands for employees' own communications

The Board also found (ROA.507) that the following subpoena requests—

which sought Hernandez's and Cardenas's Section 7-protected communications

with employees and other third parties—were overbroad and thus interfered with

employees' Section 7 rights, in violation of Section 8(a)(1):

> 1. All audio and/or video recordings of any [of the Company's]
> current or former managers, supervisors, leaders or agents at the La
> Quinta Store relating to union organizing at [the Company's] La
> Quinta stores, and/or the allegations contained in the Complaint. In
> addition, if a written transcript of such a recording has been prepared,
> also provide copies of the same.

> 2. Communications with the media concerning Your employment with
> [the Company], the Union, and/or the allegations contained in the
> Complaint.

. . .

6. Communications with current and/or former employees of [the Company] concerning any Communication between Store Manager Matt Burton and other partners at the La Quinta store or other [Company] locations.

7. Communications with current and/or former employees of [the Company] concerning violations by employees of [Company] policies at [the Company's] La Quinta store or other [Company] locations.

8. Documents, Communications, and Recordings that contain any information concerning any act or failure to act alleged in the Complaint or the credibility of any witness or potential witness in this proceeding.

. . .

10. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing Your employment with [the Company].

11. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing your presence in the La Quinta Store on May 12, 2022.

12. All Documents, including electronically stored information such as emails, voicemails, and text messages, related to, discussing, or referencing your presence in the La Quinta store on May 18, 2022.

13. All journals or notebooks You kept related to Your employment at [the Company's] La Quinta store.

(ROA.503, 507 & n.12; ROA.176-78, 191-93.)

The Company does not dispute that these requests sought confidential information regarding employees' Section 7 activity.[11]  Nor can it.  Section 7 is a broad provision encompassing a "wide range" of activities.  *UNF W.*, 844 F.3d at 457.  At its core, it includes the types of employee discussions regarding working conditions and unionization that might well have been revealed in the requested documents.  *See Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 542 (1972).  It also comprises employee activities—such as notetaking, *see NLRB v. Hendel Mfg. Co.*, 483 F.2d 350, 351-52 (2d Cir. 1973), appeals to the media, *see NLRB v. Me. Coast Reg'l Health Care Facilities*, 999 F.3d 1, 10 (1st Cir. 2021), and the making of photographs and recordings, *see T-Mobile USA, Inc. v. NLRB*, 865 F.3d 265, 274-75 (5th Cir. 2017)—performed in furtherance of protected aims.  As the Board found, each of the identified requests was broad enough to sweep in Section 7-protected information.  (ROA.507.)

Having found that the subpoena requests asked for protected information, the Board next weighed the Company's need for the information against the burden

---

[11] The Company's argument as to the effect of the subpoena instructions is limited only to those requests (3, 4, 5, and 9) that sought employees' communications with the Board.  (Br. 52-53.)  Any argument that the remaining requests did not seek protected information based on the instructions is waived.  *See* Fed. R. App. P. 28(a)(8)(A) (opening brief "must" contain "[its] contentions and the reasons for them"); *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed abandoned.").  Nor would it have any force, as the Company specifically instructed Hernandez and Cardenas *not* to exclude any portion of documents that might reveal their own union involvement.  (ROA.176, 191.)

on employees' rights.  (ROA.507-08.)  In assessing the Company's need for the

information, the Board properly examined the relevance of the requests to the

Company's defense.  As the Board determined, the Company's requests "were

overly broad" and sought documents "not reasonably relevant to the proceeding."

(ROA.508.)  The complaint against the Company alleged that, on about May 12

and 18, Burton had warned unspecified employees about discussing the Union.

(ROA.350-51.)  To defend against the allegation that Burton made these

statements, the Board saw no need for the Company to obtain the panoply of

protected information it requested.  It was wholly unnecessary for the Company to

learn, for example, "what Hernandez and Cardenas communicated to the media,

what they spoke about to their coworkers regarding violations of [the Company's]

policy, what recordings they may possess concerning union organizing, or what

documents they may possess regarding the credibility of witnesses."  (ROA.508.)

Likewise, there was no need for the Company to request "[a]ll journals or

notebooks" related to Hernandez's and Cardenas's employment at the store for an

allegation related to statements made on specific days, nor a need for "[a]ll

Documents" in any way related to their presence in the store even on those specific

days.

Undisputedly, some documents encompassed by the Company's sweeping

demands may have been relevant to its defense.  But, critically, not one of the

Company's subpoena requests to Hernandez and Cardenas was tailored to uncover this relevant evidence without further intrusion. *See United Nurses Assns. of Cal. v. NLRB*, 871 F.3d 767, 786 (9th Cir. 2017) (irrelevant that "subpoenas also contained other requests" that were relevant "as [the employer] chose not to limit its subpoenas to that information"). Contrary to the Company's claim (Br. 48-49), the fact that at the hearing it ultimately received a fragment of the otherwise voluminous information it demanded does not render its overbroad requests lawful at the time that the employees received them. *See Elec. Prods. Div. of Midland-Ross Corp. v. NLRB,* 617 F.2d 977, 985 (3d Cir. 1980) (explaining that "the effect" of an employer's conduct "is measured by looking at the circumstances surrounding the action at the time it in fact occurred"); *cf. Midland Transp. Co. v. NLRB*, 962 F.2d 1323, 1325-27 (8th Cir. 1992) (coerciveness of overbroad work rule insufficiently expunged by later narrowing of the rule).

The Board also examined the tendency of the requests to chill employees in their right to engage in confidential protected activity, including participating in the Board's processes. (ROA.507-08.) As the Board explained, while Hernandez and Cardenas were openly supportive of the Union, "their communications with employees and the Union were kept hidden." (ROA.507.) Because this activity remained confidential, the Board appropriately found that a reasonable employee would be chilled by the Company's request for this Section 7-protected

information, and that such "broad subpoenas" would "only seek[] to coerce and intimidate employees from participating in Board processes." (ROA.507-08.) *See Pac. Molasses*, 577 F.2d at 1182 ("inevitable result of the availability of [employees' confidential, Section 7-protected] information would be to chill the right of employees" to engage in such activity). Because the burden on employees' exercise of Section 7 activity superseded the Company's need for the information it sought, the Board determined that the requests were coercive. (ROA.507-08.)

In criticizing the Board's finding of coercion, the Company manufactures a distinction, unrecognized in law, between the coerciveness of requests for protected information and actual disclosure of such information. (Br. 56-59.) The Board and courts have consistently identified the same tendency to coerce whenever an employer seeks to uncover employees' confidential Section 7 activity, whether or not it succeeds in doing so. *See Wright Elec., Inc. v. NLRB*, 200 F.3d 1162, 1167 (8th Cir. 2000) (absent demonstrated need, unlawful under Section 8(a)(1) for an employer "to discover *or attempt to discover*" employees' Section 7-protected information (emphasis added)); *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 418 (5th Cir. 1981) ("[a]lthough unsuccessful," employer attempt at surveillance violated Section 8(a)(1)). Indeed, when an employer issues an overbroad subpoena request for protected information, it is the request, not the

disclosure, that is the source of the coercion. *See United Nurses*, 871 F.3d at 785

("[T]he harm is in the very request itself . . . .").

The Company also protests that the Board did not cite "evidence that

Hernandez and Cardenas felt coerced or changed their union or Board activities

because of the subpoenas," and did not consider that most of the requested

documents "were never produced in response." (Br. 58.) This critique ignores the

well-settled objective test under Section 8(a)(1). Again, the proper inquiry in

finding a violation is whether the conduct "tend[s] to be coercive, not whether the

employees are in fact coerced." *Brookwood Furniture,* 701 F.2d at 459 (quotation

omitted).

Thus, substantial evidence supports the Board's finding that the Company

violated Section 8(a)(1) in issuing overbroad subpoena requests (1, 2, 6, 7, 8, 10,

11, 12, and 13) demanding employees' Section 7-protected communications and

information far beyond any need for it.

### D. The Company's Arguments Regarding the Board's Test Are Unavailing

#### 1. The Board applied its longstanding liability test

The Company contends (Br. 27-36) that the Board's application of its usual

balancing test to find that the subpoena requests violated Section 8(a)(1) was

somehow novel. Far from it. In evaluating the lawfulness of a subpoena

requesting employees' Section 7-protected information, the Board has consistently

conducted the same inquiry. Again, the Board asks whether the employer's need for the protected information to prepare its defense outweighs employees' confidentiality interests. *See, e.g.*, *Wright Elec.* 327 NLRB at 1195; *Tracy Toyota*, 372 NLRB No. 101, 2023 WL 4404469, at *6 (2023).

The Company posits that the Board was wrong to use its balancing test here because the test originated as a standard in discovery proceedings. (Br. 30.) To be sure, in *National Telephone Directory Corp.*, 319 NLRB 420 (1995), the Board specifically held that while protected information is generally not discoverable, it will order production if the employer's need for the information to prepare its defense outweighs employees' confidentiality interests. *Id.* at 421-22. It was long ago, however, that the Board repurposed the test as a standard equally applicable to the liability context. *See Wright Elec.*, 327 NLRB at 1195.

In fact, because the tests in the liability and discovery contexts are one and the same, the Board refers to them as a single line of cases. Thus, while *National Telephone* itself arose in the discovery context, the Board has since described itself as "appl[ying] *National Telephone*" when it conducts the same inquiry to find a violation of Section 8(a)(1). *In re Guess?*, 339 NLRB 432, 434 (2003) (discussing the Board's use of *National Telephone* in *Wright Electric*). That is precisely what the Board did here.

36

**2. The Board's test aligns with the statutory text and principles of fair notice**

Next, the Company contends that the Board's longstanding test is incompatible with Section 8(a)(1), Section 8(c), and constitutional principles of fair notice. (Br. 37-40.)  The Board's test comports with all three.

As to Section 8(a)(1), the Company claims that whether its interest in employees' protected information outweighed their confidentiality rights "has nothing to do with" whether it interfered with or coerced employees in the exercise of their Section 7 rights, as prohibited by that section. (Br. 37.)  To the contrary, there is a direct relationship between an employer's comparative interest in protected information and whether its pursuit is coercive.  While reasonable employees can understand an employer's need for limited, relevant information about their protected activity to support its defense, they are likely to view a subpoena request for unnecessary information as "only seek[ing] to coerce and intimidate." (ROA.508.)  In this way, an employer's need for the requested information bears precisely on whether the request tends to interfere with employees' exercise of their Section 7 rights. *See Wright Elec.*, 200 F.3d at 1167.

Likewise, there is a clear connection between an employer's need for protected information and whether Section 8(c) shelters an employer's requests. Section 8(c) prohibits the use of the "expressing of any views, argument, or opinion" as evidence of an unfair labor practice "if such expression contains no

37

threat of reprisal." 29 U.S.C. § 158(c). The Company claims that the Board's balancing test is incongruous with Section 8(c) because "[c]oercive threats of reprisal do not turn on a balancing of interests." (Br. 38.) Assuming arguendo that a subpoena request may constitute a "view, argument, or opinion" that receives the protection of Section 8(c), whether or not an employer has a legitimate interest in information relates directly to whether its subpoena will tend to be seen by employees as a threat. *See Martin Sprocket & Gear Co. v. NLRB*, 329 F.2d 417, 420 (5th Cir. 1964) (seeking information about employees' union activities without "legitimate purpose" could "well tend to influence the employees" and was thus "not the expression of a view, argument, or opinion" under Section 8(c)).

The Company further contends that the Board's balancing test does not provide employers with fair notice of the types of requests that will be found to violate the Act, and is thus void for vagueness. (Br. 39-40.) *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498-99 (1982) (unduly vague laws can violate due process). The Board's test—and the decades of Board precedent applying it—offers employers ample notice of the conduct that they must avoid. It is a well-established principle that employees have a right to confidentiality in their Section 7 activity, and that any effort by an employer to uncover that information will normally constitute an unfair labor practice. When preparing to defend itself in an unfair-labor-practice proceeding, however, the

employer can avoid liability by narrowly tailoring its requests for confidential,

Section 7-protected information to what is necessary to its defense.  The Board has

been particularly clear that, given the other investigative tools at the employer's

disposal and the severe burden on employee rights, it does not view prehearing

disclosure of employee communications with the Board as necessary to an

employer's defense.  On this point, it has set out precise regulations setting forth

when and how an employer can obtain such information.  *See* 29 C.F.R. §

102.118(a), (e).

The Company's argument also ignores that the Supreme Court has routinely

embraced the use of balancing tests to find unfair-labor-practice liability.  *See*

*Lechmere, Inc. v. NLRB*, 502 U.S. 527, 539 (1992) (where nonemployee union

organizers lack access to employees outside employer's property, balancing of

employees' right to receive information about unionization and employer's

property rights); *Beth Isr. Hosp. v. NLRB*, 437 U.S. 483, 501 (1978) (balancing of

employees' rights of solicitation and distribution at the workplace against the

"conflicting legitimate interests" of health-care employers in preventing disruption

of patient care); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801 (1945)

(balancing of employees' right of solicitation against employer's assertion of

"special circumstances").  So too has this Court.  *See NLRB v. Guild Indus. Mfg.*

*Corp.*, 321 F.2d 108, 113 (5th Cir. 1963) (balancing employer need to question

employees to defend against unfair-labor-practice charges and "the risk of intimidation [to employees] which interrogation as to union matters necessarily entails"); *see also Lowes Home Ctrs., LLC v. NLRB*, 850 F. App'x 886, 889-90 (5th Cir. 2021) (balancing employer's interest in maintaining confidentiality policy against employees' right to discuss wages).  In the end, the Company's complaint of vagueness merely distracts from the fact that its plainly overbroad requests display no effort at even modest tailoring.  *See Hoffman Ests.*, 455 U.S. at 495 (a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others").

Contrary to the Company's claims, the Board's test thus fits comfortably within the bounds of the statute and the limits of due process.

### 3. The Company has waived its argument that the Board violated its First Amendment right to petition the government, which, in any event, is meritless

Finally, the Company contends that the Board's decision interfered with the First Amendment "right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  (Br. 40-43.)  The Court need not reach this argument because the Company waived it by failing to raise it to the Board in accordance with the Board's regulations.  Under the rule established in *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952), "courts should not topple over administrative decisions unless the administrative body not only has

erred but has erred against objection made at the time appropriate under its practice," *id.*[12]

In any event, the First Amendment offers no protection where, as here, the purported petitioning conduct has an illegal objective. In elucidating the First Amendment right to petition the government, the Supreme Court has explained that persons have the constitutional right to "influence the passage or enforcement of laws." *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). This right extends to petitioning of all branches, including the executive branch (and its agencies), the legislature, and the courts. *See Cal. Motor Transp. Co. v. Trucking Unlmtd.*, 404 U.S. 508, 510 (1972). Thus, before adjudicating alleged violations of the Act involving otherwise protected court filings, the Board

---

[12] The Board has codified the appropriate time for objections in Section 102.46(a) of its regulations. *See* 29 C.F.R. § 102.46(a). Per those established procedures, a party objecting to any portion of the administrative law judge's decision must file written exceptions with the Board, *id.*, specifying, among other things, the "questions of procedure, fact, law, or policy to which exception is taken" and "the grounds for the exception," *id.* § 102.46(a)(1)(i)(A), (D). The Board's regulations further state that "[a]ny exception to a ruling, finding, conclusion, or recommendation which is not specifically urged will be deemed to have been waived." *Id.* § 102.46(a)(ii). Likewise, "[m]atters not included in exceptions or cross-exceptions may not thereafter be urged before the Board, or in any further proceeding." *Id.* § 102.46(f). The Company's exceptions to Judge Tracy's decision failed to make any mention of its right-to-petition argument in accordance with the Board's regulations (ROA.443-44). The Company's opening brief offers no reason for its failure to file an exception, nor does it contest the validity of the Board's rules. *See* Fed. R. App. P. 28(a)(8)(A) (argument not raised in opening brief waived); *Davis*, 706 F.2d at 571.

must take into account the "burden on petitioning" posed by the threat of an unfair-labor-practice finding. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 529 (2002).

The Supreme Court established a framework for accommodating that important constitutional right in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), which addressed the Board's authority to enjoin state-court lawsuits. In that case, the Board had found that an employer violated Section 8(a)(1)—which, in part, prohibits employers from retaliating against employees for exercising their statutory rights—by filing a state-court lawsuit intended to coerce and retaliate against the defendant-employees for their protected conduct of filing Board charges against the employer. *Bill Johnson's*, 461 U.S. at 737-41. In doing so, the Board had applied its then-controlling standard which held that "the *only* essential element of a violation" was retaliatory motive and that a lawsuit's lack of merit was not an independent requirement. *Id.* at 739-40 (citing *Power Sys., Inc.*, 239 NLRB 445 (1978)). On review, the Supreme Court overruled the Board's standard based on the "weighty countervailing considerations" of the First Amendment and the constitutional right to petition. *Id.* at 741-43. The Court concluded that "the Board may not halt the prosecution of a state-court lawsuit, regardless of the plaintiff's motive, unless the suit lacks a reasonable basis in fact or law." *Id.* at 748. In other words, to demonstrate that a lawsuit is a "sham," *BE & K*, 536 U.S. at 527, and thus not immune from constituting an unfair labor

practice, both retaliatory motive and objective baselessness are required.  461 U.S. at 748-49.

Nonetheless, the Supreme Court made clear that application of this "sham" exception was not the only case in which petitioning activity could be found to violate the Act.  It also observed in footnote 5 of *Bill Johnson's* that:

> It should be kept in mind that what is involved here is an employer's lawsuit that the federal law would not bar except for its allegedly retaliatory motivation.  We are not dealing with a suit that is claimed to be beyond the jurisdiction of the state courts because of federal-law preemption, or a suit that has an objective that is illegal under federal law.  Petitioner concedes that the Board may enjoin these latter types of suits. . . . Nor could it be successfully argued otherwise, for we have upheld Board orders enjoining unions from prosecuting court suits for enforcement of fines that could not lawfully be imposed under the Act, and this Court has concluded that, at the Board's request, a District Court may enjoin enforcement of a state-court injunction 'where [the Board's] federal power pre-empts the field.'

*Id.* at 737 n.5 (citations omitted).  As such, the *Bill Johnson's* framework incorporates two additional exceptions—for lawsuits that are either preempted by federal law or that have objectives that are illegal under federal law—pursuant to which the Board may find petitioning conduct unlawful.  *See Emery Worldwide, A.C.F. Co. v. NLRB*, 966 F.2d 1003, 1006 n.4 (5th Cir. 1992); *see also United Nurses*, 871 F.3d at 787 (discussing preemption and illegal-objective exceptions); *Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union, Loc. 705*

*v. NLRB*, 820 F.2d 448, 452 (D.C. Cir. 1987) (discussing illegal-objective exception).[13]

Here, the Company asserts that its subpoena requests constituted petitioning or related conduct within the reach of the First Amendment. (Br. 41.) But it offers little in the way of argument—and no in-circuit precedent—demonstrating why constitutional immunity for efforts to influence the government should extend to an employer's demands for protected information from its employees. The scant precedent it does cite notes that, not long before, the same court had expressed skepticism that petitioning immunity "applies at all" to subpoenas directed at private parties. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 n.7 (9th Cir. 2006) (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078-79 (9th Cir. 2004)).

Assuming that the subpoena requests do in fact constitute petitioning within the meaning of the First Amendment, they still fall outside its protection. The Company claims that "[t]o impose liability under Section 8(a)(1) for petitioning activity notwithstanding the First Amendment, the Board must show that the

---

[13] In *BE & K Construction Company v. NLRB*, 526 U.S. 516 (2002), the Supreme Court clarified the scope of the baseless-and-retaliatory exception in the context of "reasonably based but unsuccessful" litigation that has already been completed. *Id.* at 536-47. The two separate exceptions described in footnote 5 of *Bill Johnson's* remain unchanged. *See, e.g.*, *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*, 611 F.3d 483, 492 (9th Cir. 2010) (explaining that *BE & K* "did not affect" the exceptions in footnote 5 of *Bill Johnson's*); *Can-Am Plumbing, Inc. v. NLRB*, 321 F.3d 145, 151 (D.C. Cir. 2003) (same).

petition is a "sham." (Br. 41-42.) This incomplete statement of law wholly ignores the exception for petitioning that has an independent illegal objective. In this case, the Company's use of the Board's processes to issue subpoenas containing overbroad requests for Section 7-protected information harbored an objective that was counter to federal law.

In assessing whether petitioning activity has an "illegal objective," courts ask not whether the *act* of petitioning is unlawful, but whether the result that the litigant accomplishes through the petition "is one that, if granted by the decisionmaker, would violate" the Act. *Int'l Bhd. of Teamsters Loc. 947 v. NLRB*, 66 F.4th 1294, 1310 (11th Cir. 2023); *see also In re Manno Elec., Inc.*, 321 NLRB 278, 297 (1996) (explaining that an "'illegal objective" under the *Bill Johnson's* exception means one that "achieve[s] a result incompatible with" the Act), *enforced*, 127 F.3d 34 (5th Cir. 1997). Certainly, the Company had a right to petition the Board to issue subpoenas to employees. The inquiry, however, is whether the contents of the subpoenas, once requested and issued, violated the Act. As the Board explained, "the controversy here is not the issuance of the subpoenas to Hernandez and Cardenas." (ROA.508.) Rather, "[t]he controversy is the depth and scope of these requests to employees which infringed on their right to engage in confidential protected activity" without legitimate need. (ROA.508.) As courts have repeatedly found, subpoenas that sweep in Section 7-protected information

untethered from an employer's defense have an illegal objective. *See United Nurses*, 871 F.3d at 786-87 (employer's subpoena "demands for confidential Section 7 information, including information irrelevant to" its defense in a Board proceeding, "reflects an illegal objective"); *Wright Elec.*, 200 F.3d at 1167. Again, the Company, having failed to even recognize this additional, alternative ground for denying it First Amendment immunity, offers no rebuttal or contrary precedent. Thus, the First Amendment right to petition the government did not shield the Company's requests. *See United Nurses*, 871 F.3d at 787.

## CONCLUSION

The Board respectfully requests that the Court deny the Company's petition
for review and enforce the Board's Order.

s/ Elizabeth A. Heaney
ELIZABETH A. HEANEY
*Supervisory Attorney*

s/ Jared H. Odessky
JARED H. ODESSKY
*Attorney*

National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-1743
(202) 273-1937

WILLIAM B. COWEN
  *Acting General Counsel*

STEPHANIE CAHN
  *Acting Deputy General Counsel*

PETER SUNG OHR
  *Associate General Counsel*

RUTH E. BURDICK
  *Deputy Associate General Counsel*

MEREDITH JASON
  *Assistant General Counsel*

June 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| STARBUCKS CORPORATION | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | No. 24-60500 |
| | ) | |
| v. | ) | Board Case No. |
| | ) | 21-CA-304228 |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ Jared H. Odessky
JARED H. ODESSKY
Attorney
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-1937

Dated at Washington, DC
this 24th day of June 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| STARBUCKS CORPORATION | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | No. 24-60500 |
| | ) | |
| v. | ) | Board Case No. |
| | ) | 21-CA-304228 |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board

certifies that brief contains 10,721 words of proportionally spaced, 14-point type,

and that the word processing system used was Microsoft Word 365.

/s/ Jared H. Odessky
JARED H. ODESSKY
Attorney
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-1937

Dated at Washington, DC
this 24th day of June 2025