No. 24-60500

# In the United States Court of Appeals for the Fifth Circuit

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

*On Appeal from a Decision of the National Labor Relations Board, No. 21-CA-304228*

## CORRECTED REPLY BRIEF FOR PETITIONER/CROSS-RESPONDENT STARBUCKS CORPORATION

JEFFREY S. HILLER
LITTLER MENDELSON, P.C.
  *41 S. High Street, Ste. 3250*
  *Columbus, OH 43215*

JONATHAN O. LEVINE
LITTLER MENDELSON, P.C.
  *1111 E. Kilbourn Avenue, Ste. 1000*
  *Milwaukee, WI 53202*

LISA S. BLATT
AMY MASON SAHARIA
CLAIRE R. CAHILL
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

# TABLE OF CONTENTS

Page

INTRODUCTION..........................................................................................1

ARGUMENT ...............................................................................................3

I.  The Board Violated the APA and the NLRA By Adopting
    *National Telephone* as a Section 8(a)(1) Liability Standard....................3

    A.  The Board Violated the APA ............................................................4

    B.  The Board's Test Violates the NLRA .............................................8

    C.  The Board's Test Raises Constitutional Concerns ......................11

II. The Board Erroneously Concluded That Starbucks Committed
    an Unfair Labor Practice.......................................................................19

    A.  Requests for Section 7 Protected Information.............................20

    B.  Requests for Information About Employees' Section 7
        Conduct .............................................................................................29

CONCLUSION..........................................................................................33

i

# TABLE OF AUTHORITIES

Page

## CASES

*ABM Onsite Servs.-W., Inc. v. NLRB*, 849 F.3d 1137 (D.C. Cir. 2017) ............8

*Apache Corp. v. FERC*, 627 F.3d 1220 (D.C. Cir. 2010) .....................................31

*Apple Inc. v. NLRB*,
    --- F.4th ----, 2025 WL 1862823 (5th Cir. July 7, 2025) ................................21

*Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983) ................................15

*Booster Lodge No. 405 v. NLRB*, 412 U.S. 84 (1973)........................................15

*Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469 (D.C. Cir. 2020)...........3, 8

*Ctr. Prop. Mgmt. v. NLRB*, 807 F.2d 1264 (5th Cir. 1987) ...............................21

*Emery Worldwide v. NLRB*, 966 F.2d 1003 (5th Cir. 1992).................3, 15, 17

*Exxon Rsch. & Eng'g Co. v. NLRB*, 89 F.3d 228 (5th Cir. 1996) .....................21

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .................................8

*Garner v. U.S. Dep't of Lab.*, 221 F.3d 822 (5th Cir. 2000) ..............................19

*Guess?, Inc.*, 339 NLRB 432 (2003) ......................................................................6

*Int'l Bhd. of Teamsters Loc. 947 v. NLRB*,
    66 F.4th 1294 (11th Cir. 2023) ........................................................................16

*Nat'l Tel. Directory Corp.*, 319 NLRB 420 (1995) ...................................*passim*

*NLRB v. Brookwood Furniture, Div. of U.S. Indus.*,
    701 F.2d 452 (5th Cir. 1983).................................................................20, 21, 22

*NLRB v. Camco, Inc.*, 340 F.2d 803 (5th Cir. 1965) ..........................................23

*NLRB v. Indianapolis Mack Sales & Serv., Inc.*,
    802 F.2d 280 (7th Cir. 1986)............................................................... *passim*

*NLRB v. Martin A. Gleason, Inc.*, 534 F.2d 466 (2d Cir. 1976)........................24

*NLRB v. Pneu Elec., Inc.*, 309 F.3d 843 (5th Cir. 2002) ..............................1, 9

*Ozark Auto. Distribs., Inc. v. NLRB*, 779 F.3d 576 (D.C. Cir. 2015) ..............30

*Quickway Transp., Inc.*, 372 NLRB No. 127, slip op. (Aug. 23, 2023)...........12

*Retail Clerks Int'l Ass'n v. NLRB*, 373 F.2d 655 (D.C. Cir. 1967)..................23

*Robertshaw Controls Co. v. NLRB*, 483 F.2d 762 (4th Cir. 1973)....................24

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*,
    611 F.3d 483 (9th Cir. 2010)............................................................................16

*Starbucks Corp.*, 372 NLRB No. 159, slip op. (Nov. 28, 2023) ........................13

*Starbucks Corp. v. NLRB*, 140 F.4th 971 (8th Cir. 2025)................................27

*Television Wis., Inc.*, 224 NLRB 722 (1976) ......................................................15

*Tex. Indus., Inc. v. NLRB*, 336 F.2d 128 (5th Cir. 1964) ............................22, 23

*Tracy Auto, L.P.*, 372 NLRB 101, slip op. (July 6, 2023)....................................7

ii

Page

Cases—continued:

*TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410 (5th Cir. 1981) ............23
*United Nurses Ass'n v. NLRB*, 871 F.3d 767 (9th Cir. 2017) .........................17
*Venetian Casino Resort, LLC v. NLRB*, 793 F.3d 85 (D.C. Cir. 2015).....14, 16
*Wright Electric, Inc.*, 327 NLRB 1194 (1999) .............................................5, 6, 7

## STATUTE AND REGULATIONS

29 U.S.C. § 158 ...............................................................................3, 8, 10
29 C.F.R.
   § 102.31...............................................................................................7
   § 102.118.............................................................................................27

## OTHER AUTHORITY

Br. for Pet'r, *Bill Johnson's Rests., Inc.*, 461 U.S. 508 (1972)
   (No. 81-2257), 1982 U.S. S. Ct. Briefs LEXIS 848........................................15

## INTRODUCTION

The General Counsel's brief is a belated effort to rehabilitate the flawed and incomplete analysis the Board conducted in the order under review. Starbucks, in compliance with the Board's rules and regulations, issued document subpoenas to two partners in an unfair labor practice proceeding before an ALJ. The Board held that Starbucks' use of the Board's procedures to obtain evidence to defend itself from a baseless unfair labor practice charge violated NLRA Section 8(a)(1). In reaching that conclusion, the Board never considered whether Starbucks' subpoenas would "tend to be coercive" when "assessed within the totality of circumstances surrounding the occurrence at issue," as this Court requires. *NLRB v. Pneu Elec., Inc.*, 309 F.3d 843, 850 (5th Cir. 2002) (citation omitted).

Instead, adopting a position that this Court has repeatedly criticized, the Board summarily held that some of Starbucks' document requests were "inherently coercive." Then, to assess whether other requests violated Section 8(a)(1), the Board converted a discovery balancing test (the *National Telephone* test) into an unfair labor practice liability standard, transforming every ALJ ruling revoking a subpoena into an *automatic* violation of Section 8(a)(1). The General Counsel (at 36) admits on appeal that, under the decision

1

below, the test for resolving a discovery dispute and for imposing unfair labor practice liability is "one and the same." Worse, the Board adopted that test without showing any awareness that it was applying *National Telephone* to a new context and without explaining how the test comports with Section 8(a)(1). Worse still, after adopting that test, the Board did not apply the balancing analysis to the facts.

Rather than defend the Board's lack of analysis below, the General Counsel on appeal tries to recharacterize the order's legal conclusions and to supply the reasoning that the order lacked. This cleanup effort comes too late. It is "the Board's order, not its petition for enforcement, that is the subject of [this Court's] review." *NLRB v. Indianapolis Mack Sales & Serv., Inc.*, 802 F.2d 280, 285 (7th Cir. 1986). In any event, no explanation from the Board— whether in its order below or the General Counsel's brief on appeal—can justify the Board's ultimate liability determination. Starbucks' subpoenas were lawful attempts to obtain relevant evidence for its defense in a Board proceeding, not unfair labor practices.

**ARGUMENT**

I.    **The Board Violated the APA and the NLRA By Adopting *National Telephone* as a Section 8(a)(1) Liability Standard**

The Board has never explained how *National Telephone*'s discovery test—which balances employees' confidentiality interests in subpoenaed materials against an employer's need for the materials as evidence in Board proceedings, *see* 319 NLRB 420, 421-22 (1995)—provides a standard to assess whether an employer "interfere[d] with, restrain[ed], or coerce[d] employees in the exercise" of their Section 7 rights, *see* 29 U.S.C. § 158(a)(1).    Yet the Board summarily held that *National Telephone* provides the standard to assess liability for half the subpoena requests in this case.    RE7.    The Board's failure to explain its liability standard is error and grounds for vacatur and remand.    *See Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 487 (D.C. Cir. 2020); *Emery Worldwide v. NLRB*, 966 F.2d 1003, 1005 (5th Cir. 1992) (the Board "is not allowed to change direction without sufficient explanation of what it is doing and why").

The General Counsel (at 16, 37-38) now defends using *National Telephone*'s balancing test as a Section 8(a)(1) liability standard.    But its post hoc arguments are too little too late.    "The Board's appellate counsel cannot fill in the holes in the agency's decision."    *NLRB v. Indianapolis Mack Sales*

3

& *Serv., Inc.*, 802 F.2d 280, 285 (7th Cir. 1986).  The Board's order "stands or falls on its express findings and reasoning." *Id.*  And, regardless, the General Counsel's defense of *National Telephone* as a liability standard fails on its own terms.

## A.    The Board Violated the APA

The Board announced for the first time in this case that *National Telephone* provides the "proper standard" to judge whether employers' subpoenas in unfair labor practice proceedings before the Board violate Section 8(a)(1).  RE7.  In doing so, the Board transformed a discovery test governing whether to revoke employers' Board-issued document subpoenas into a metric for judging whether employers coerced employees in the exercise of their right to organize.  *See* Starbucks Br. 31-36.  The Board's one-sentence pronouncement that the "proper standard to apply is that contained in *National Telephone*," RE7, did not explain how *National Telephone* aligns with Section 8(a)(1), nor did it acknowledge that it was expanding *National Telephone*'s reach to a new context.  That was reversible error.

The General Counsel (at 35-36) does not even try to argue that the Board sufficiently explained its reasons for using *National Telephone* as the standard for Section 8(a)(1) liability.  It thus tacitly admits—as it must—that

the Board did not demonstrate an "aware[ness]" that it was expanding *National Telephone*'s reach and did not explain how *National Telephone* is "consistent" with the NLRA. *Indianapolis Mack*, 802 F.2d at 284. The statement that *National Telephone* was the "proper standard to apply," RE7, is no explanation at all.

Rather than defend its "unadorned conclusion," *see Indianapolis Mack*, 802 F.2d at 284, the General Counsel (at 35-36) suggests that the Board did not need to provide an explanation because it applied its "usual balancing test," which the General Counsel claims the Board "repurposed" as a Section 8(a)(1) liability test "long ago" in *Wright Electric, Inc.*, 327 NLRB 1194 (1999). That is simply incorrect.

In *Wright Electric*, the Board considered whether to enjoin an employer's discovery requests for employee authorization cards in a state court malicious prosecution lawsuit. 327 NLRB at 1195. *Wright Electric* did not involve a subpoena in a Board proceeding. In enjoining the state court discovery requests, the Board quoted *National Telephone* for the proposition that it is "entirely possible that employees would be 'chilled' when asked to sign a union card if they knew the employer could see who signed." *Id.* (quoting *Nat'l Tel.*, 319 NLRB at 421). The Board thus held that employers

that seek "to obtain the identities of employees who sign authorization cards" violate the NLRA. *Id.* (quoting *Nat'l Tel.*, 319 NLRB at 421). The Board did not announce, as it did here, that *National Telephone*'s balancing test supplied the "proper standard" for assessing employer liability under Section 8(a)(1).

To be sure, the Board in *Wright Electric* dabbled with balancing employer and employee interests. After declaring the employer's request for authorization cards "illegal under Federal labor law," the Board considered and rejected the employer's "business justification" for its state court discovery request. *Id.* The Board then added that its injunction was proper because the employer had an "illegal objective" in requesting the authorization cards. *Id.* The standard employed by *Wright Electric* thus resembles the three-part test the Board later adopted in *Guess?, Inc.*, 339 NLRB 432, 433-34 (2003), to assess whether an employer "engag[ing] in discovery in a civil proceeding in another forum" violates Section 8(a)(1).[1]

---

[1] In *Guess?, Inc.*, 339 NLRB 432, 434 (2003), the Board held that employer subpoenas in civil court proceedings may constitute an unfair labor practice if the subpoena requests (1) are irrelevant, (2) have an illegal objective, or (3) the employees' confidentiality interests outweigh the employer's interest in obtaining the information.

But in *this* case, the Board expressly "disagree[d] with the General Counsel's reliance on *Guess?* … to support its argument" that Starbucks violated Section 8(a)(1), limiting *Guess?* (and, by extension, *Wright Electric*) to situations where employers requested discovery *outside* Board proceedings. RE7. The Board here adopted *National Telephone*'s balancing test to address situations where employers issued subpoenas "pursuant to Section 102.31 of the Board's rules and regulations" in "the underlying unfair labor practice proceeding itself, not in a separate proceeding." RE7. Thus, the General Counsel's claim on appeal (at 36) that *Wright Electric* already adopted *National Telephone* as the applicable liability standard is inaccurate.[2]

Even if *Wright Electric* could be read as "repurpos[ing]" *National Telephone* "as a standard equally applicable to the liability context," NLRB Br. 36, that would do the Board no good. *Wright Electric*, like the Board's decision here, never explains how using *National Telephone*'s balancing test (or any balancing test) to determine whether employers engaged in unfair

---

[2] The same is true of the Board's passing reference (at 36) to *Tracy Auto, L.P.*, 372 NLRB 101, slip op. at *5-6 (July 6, 2023). In *Tracy Auto*, the Board determined that an employer's subpoenas seeking an employee's communications with the Board violated Section 8(a)(1) because such a request was "inherently coercive." *Id.* at *6 (citation omitted). The Board did not even cite *National Telephone*, much less adopt its balancing test as a liability test.

labor practices is "permissible under the statute." *Circus Circus Casinos*, 961 F.3d at 476 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).  The Board "cannot justify a departure from its precedent simply by pointing to another one of its cases that departed from precedent, if that other case does not itself announce the new standard or a supporting rationale for it." *ABM Onsite Servs.-W., Inc. v. NLRB*, 849 F.3d 1137, 1147 (D.C. Cir. 2017). Because the Board has never offered a reasoned explanation in *any* case, the Board's order must be vacated and remanded.  *Id.*

### B.    The Board's Test Violates the NLRA

In any event, any explanation for applying *National Telephone* in this context would fall short.  A balancing test used to resolve discovery disputes that pits an employer's need for evidence against employees' confidentiality interests has no equivalence to Section 8(a)(1)'s liability standard.  Neither the Board below nor the General Counsel on appeal provides any reason to conclude that every single time that, in an ALJ's subjective opinion, employees' confidentiality interests trump an employer's need for subpoenaed materials for a Board proceeding, reasonable employees would be "coerce[d]" to forgo union activity.  *See* 29 U.S.C. § 158(a)(1).

8

Attempting to supply the reasoning missing below, the General Counsel posits that *National Telephone*'s test works as a Section 8(a)(1) liability standard because employees are "likely to view a subpoena request for unnecessary information as 'only seek[ing] to coerce and intimidate,'" while employees "understand an employer's need for limited, relevant information about their protected activity." NLRB Br. 37 (citing RE8). But the Board's premise is flawed. An employer will not be liable under *National Telephone*'s test only when requesting "unnecessary information." Rather, under *National Telephone*, an employer is liable whenever employees' confidentiality interests outweigh the employer's need for the information.

Further, the General Counsel's brief provides no basis for asserting that the degree of coercion hinges on the relevance of the employers' subpoena requests. Whether an employer has committed an unfair labor practice depends on whether its actions tend to coerce when considered "within the *totality of circumstances* surrounding the occurrence at issue." *NLRB v. Pneu Elec., Inc.*, 309 F.3d 843, 850 (5th Cir. 2002) (emphasis added).

Sometimes when an employer issues subpoenas that an ALJ later revokes under *National Telephone*, the totality of circumstances will dispel any possibility of coercion. This case provides a prime example. *See* Starbucks

Br. 49-60.  Yet if *National Telephone* were a liability test, every single revoked employer subpoena would automatically trigger unfair labor practice liability, even if the subpoenas were issued under circumstances where no reasonable employee would be coerced.  That result deviates from the NLRA's text and this Court's totality-of-circumstances test.

Using *National Telephone* as a liability test also clashes with the NLRA's speech protections in Section 8(c).  The General Counsel (at 38) does not dispute that a subpoena request qualifies as a "view, argument, or opinion," which means the request cannot "constitute or be evidence of an unfair labor practice" unless it contains a "threat of reprisal" or "promise of benefit."  29 U.S.C. § 158(c).  *National Telephone*'s balancing test, though, would impose liability for subpoena requests even when employers never threatened reprisal.

The General Counsel (at 38) half-heartedly suggests that *National Telephone* addresses "threat[s]" because "whether or not an employer has a legitimate interest in information relates directly to whether its subpoena will tend to be seen by employees as a threat."  That argument, though, mischaracterizes *National Telephone*, which does not turn on whether an employer has a "legitimate interest in information."  An employer may have a

legitimate interest in obtaining exculpatory evidence from an employee yet still "lose" under *National Telephone*'s test because the employee's confidentiality interest wins out. So even if the General Counsel were right that reasonable employees would perceive illegitimate employer requests for information as "threats of reprisal," *National Telephone*'s test does not help the Board distinguish between "legitimate" and "illegitimate" discovery requests.

### C.    The Board's Test Raises Constitutional Concerns

The General Counsel's arguments do little to mitigate the host of constitutional concerns that the decision below presents.

1.    To start, *National Telephone*'s test is vague and inherently subjective. An employer seeking evidence from employees to defend itself in unfair labor practice proceedings can, at best, guess what conduct will incur liability. An employer may have a strong need for certain evidence to present its defense and believe that its incursion on employees' confidentiality interests is minimal, only to have an ALJ weigh the interests differently. If the employer guesses wrong, then, under the Board's new liability test, the employer will face per se liability under Section 8(a)(1). Employers will forgo one of their few opportunities for discovery in Board proceedings, rather than

gamble that an ALJ will conclude that their need for the information trumps employee confidentiality interests.

That seems to be exactly what the General Counsel wants. The General Counsel (at 38) claims that employers have "ample notice of the conduct that they must avoid"—they should simply refrain from trying to "uncover" information about employees' Section 7 activity. That is easier said than done when the Board hauls an employer before it and charges the employer with *interfering with employees' Section 7 activity*. If an employer wants to prepare a defense, it oftentimes must "uncover" information related to employees' Section 7 activities because those activities are directly at issue in unfair labor practice proceedings. Indeed, because the Board's position is that it is not required to produce even exculpatory evidence, *see Quickway Transp., Inc.*, 372 NLRB No. 127, slip op. at 1 n.1 (Aug. 23, 2023), employers must use their limited discovery tools like subpoenas to obtain essential evidence about the allegedly unlawful activities.

The General Counsel (at 39) alternatively suggests that employers have nothing to fear if they "narrowly tailor[]" their requests for confidential, Section 7 protected information "to what is necessary" for their defense. This case again illustrates why that suggestion lacks merit. Here, one of Starbucks'

narrowly tailored requests was for Hernandez's notes or journal entries "related to [Hernandez's] employment" at Starbucks, because Starbucks believed the notes would inform whether Starbucks' store manager made unlawful statements. ROA.284. Starbucks genuinely needed that information for its defense; indeed, Starbucks eventually used Hernandez's journal to discredit Hernandez's testimony and absolve itself of liability. *See Starbucks Corp.*, 372 NLRB No. 159, slip op. at 4 & n.24 (Nov. 28, 2023). But the ALJ revoked Starbucks' subpoena request (albeit, without prejudice) using *National Telephone*'s balancing test. ROA.414; *see* Starbucks Br. 32-33.

According to the ALJ, even if Starbucks requested "some relevant information," the employees' interests outweighed Starbucks' interests because the "information would reveal protected conduct or communications by [Hernandez and Jazmine Cardenas] and other employees." ROA.414. In other words, even if, as the General Counsel suggests, Starbucks had narrowly tailored its subpoena to *only* evidence that was in fact exculpatory, Starbucks still would have "lost" under *National Telephone* and incurred unfair labor practice liability under the Board's test. The General Counsel's solution to *National Telephone*'s vagueness problem is therefore no solution at all.

2.  Moreover, *National Telephone* cannot govern Section 8(a)(1) liability because it would allow the Board to impose liability for First-Amendment-protected petitioning activity.  *See* Starbucks Br. 40-43.  The General Counsel (at 44) provides no basis to dispute that subpoenas "constitute petitioning within the meaning of the First Amendment."  The Board therefore cannot impose liability under Section 8(a)(1) for an employer's subpoenas unless the employer's petitioning activity is a "sham," meaning it is (1) "objectively baseless," and (2) "is brought with the specific intent to further wrongful conduct through the use of governmental process."  *Venetian Casino Resort, LLC v. NLRB*, 793 F.3d 85, 92 (D.C. Cir. 2015) (citations omitted).

Yet *National Telephone*'s balancing test imposes liability *any* time an ALJ revokes an employer's subpoenas.  Whether the subpoenas are "objectively baseless" or the employer has "wrongful" intent is not part of its inquiry.  If it were, the Board could not have found Starbucks liable here because the ALJ found no proof that Starbucks knew that Hernandez and Cardenas participated in the Board's process, nor that Starbucks issued the subpoenas to Cardenas and Hernandez with "animus" or "discriminatorily" for cooperating with the Board investigation.  RE9-10.

Even though the Supreme Court has held that the Board cannot "condemn" petitioning activity "as an unfair labor practice" unless the activity is a "sham," *see Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (citations omitted), the General Counsel (at 43-44) circularly argues that the First Amendment does not shield petitioning activity if the activity constitutes an unfair labor practice—*i.e.*, if the employer violates Section 8(a)(1). That argument nullifies the right to petition.

To be sure, *Bill Johnson's* allowed the Board to enjoin lawsuits that had "an objective that is illegal under federal law." 461 U.S. at 737 n.5. But this "illegal objective" exception means that the employer or union cannot, through civil litigation, try to force a *result* that would otherwise be illegal under federal law.[3] For example, in *Emery Worldwide*, 966 F.2d at 1006 & n.6, this Court held that a union could not use arbitration to "unlawfully … force the

---

[3] Although the Supreme Court never fleshed out what it meant by "illegal objective," it cited to several pages of the petitioner's briefs, which provided examples of suits where "the object of the litigation was itself unlawful." 461 U.S. at 737 n.5; *see, e.g.*, Br. for Pet'r *33-35, 1982 U.S. S. Ct. Briefs LEXIS 848 ("Pet'r Br."). For example, the union could not sue to collect fines when the fines themselves were illegal. Pet'r Br. *33 (citing *Booster Lodge No. 405 v. NLRB*, 412 U.S. 84 (1973); *Television Wis., Inc.*, 224 NLRB 722 (1976)).

merger of two historically separate bargaining units" because "[a]n ordered merger of two distinct bargaining units is illegal."

The "illegal objective" exception cannot, as the General Counsel (at 45-46) posits, exclude from First Amendment protection petitioning conduct that is "illegal" merely because it coerces employees in violation of Section 8(a)(1). The exception would otherwise swallow the rule. The "sham" test was designed to add a layer of protection to petitioning activity that would otherwise violate the NLRA, but which is "protected by the First Amendment when it is part of a direct petition to government." *Venetian Casino*, 793 F.3d at 90 (citation omitted).

The cases that the General Counsel (at 43-45) cites to support its "illegal objective" argument merely recognize, as *Bill Johnson's* did, that neither employers nor unions may use lawsuits to force a result barred by federal law, including the NLRA. *E.g.*, *Int'l Bhd. of Teamsters Loc. 947 v. NLRB*, 66 F.4th 1294, 1302, 1311-12 (11th Cir. 2023) (employer's lawsuit had an illegal objective when attempting to enforce an arbitration agreement against an employee in a manner that would violate a collective bargaining agreement and thus violate the NLRA); *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*, 611 F.3d 483, 492-93 (9th Cir. 2010) (litigation had an "illegal objective"

where the lawsuit, "if successful," would "directly conflict with the Board's section 10(k) determinations"); *Emery Worldwide*, 966 F.2d at 1006 (arbitration had an "illegal objective" when it sought to "unlawfully … force the merger of two historically separate bargaining units").

Those cases are entirely distinct from this case, where Starbucks' subpoenas were deemed "illegal" only because they were allegedly coercive under Section 8(a)(1). Neither the NLRA nor any other federal law expressly prohibits requesting documents related to employees' Section 7 activity. The lone case that supports the General Counsel's argument is *United Nurses Ass'n v. NLRB*, 871 F.3d 767, 787 (9th Cir. 2017), where the Ninth Circuit adopted the General Counsel's circular reasoning that the First Amendment right to petition does not protect petitioning activity that violates Section 8(a)(1). For the reasons already explained, that result is illogical and misunderstands *Bill Johnson's*.

The General Counsel (at 40-41 & n.12) contends that the Court need not "reach" Starbucks' petitioning argument because Starbucks "waived it by failing to raise it to the Board in accordance with the Board's regulations." To be clear, the General Counsel is not arguing and cannot argue that Starbucks failed to exhaust its petitioning argument in compliance with NLRA Section

17

10(e) before raising it with this Court, because Starbucks made its petitioning argument in its exceptions brief to the Board. *See* Starbucks Exceptions Br., Supp. ROA.527-28.

Rather, the General Counsel claims that Starbucks waived the argument by deviating from the Board's rules, raising its argument in its exceptions brief but not in the exceptions themselves. This Court should reject that hyper-formalistic argument. Once the ALJ adopted *National Telephone* as a liability test (a test no party advocated), Starbucks objected in its exceptions (as it argues now) that the "ALJ erred in applying *National Telephone*" and in concluding that Starbucks "committed unfair labor practices in violation of Section 8(a)(1)." ROA.123. Starbucks further explained the basis for that objection in the accompanying brief: any test imposing liability must incorporate the First Amendment protections afforded petitioning activity. Supp. ROA.527-28.[4] And employers exercise their right to petition by issuing subpoenas in Board proceedings. Supp. ROA.527.

Starbucks thus objected both to the ALJ's conclusion that *National Telephone* is the "proper standard" for liability under Section 8(a)(1) and to

---

[4] The Court granted Starbucks' motion to lodge its brief supporting its exceptions to the ALJ's decision.

any test that infringes Starbucks' right to petition. The *National Telephone* test interferes with employers' First Amendment right to petition by imposing liability for petitioning conduct (issuing subpoenas) without asking whether the subpoenas qualify as a "sham." Starbucks did not waive this argument. Even if it did, this Court may excuse exhaustion requirements, particularly where, as here, the case involves "constitutional challenges [that] are not the types of questions committed to the discretion" of the agency. *See Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).

## II.    The Board Erroneously Concluded That Starbucks Committed an Unfair Labor Practice

Although the Board's failure to explain its erroneous adoption of a new liability standard provides reason enough to vacate and remand, this Court also should deny enforcement because the Board's order was wholly unsupported. Recall that the Board concluded that Starbucks violated Section 8(a)(1) by requesting two categories of documents. *First*, the Board concluded that Starbucks requested "communications and documents" that Hernandez and Cardenas had "provided to the General Counsel along with their affidavits" (*i.e.*, Section 7 protected information). RE6. That request, the Board said, was per se unlawful because requests for such documents are "inherently coercive." RE6. That conclusion was error not only because

Starbucks explicitly carved out Section 7 protected information from its requests, but because this Court has held that no speech or conduct is "inherently coercive." The General Counsel's effort to conduct a "totality-of-circumstances" analysis cannot compensate for the deficiencies in the order under review.

*Second*, the Board held that Starbucks' requests for "information about employees' Section 7 conduct" violated Section 8(a)(1) based on its summary conclusion that, under *National Telephone*, the "employees' rights under Section 7 to keep their protected activities confidential outweighed the employer's need for the information to present its defense." RE7. But the Board never actually applied *National Telephone* to the facts, considering only the employees' confidentiality interests. And, again, the General Counsel cannot retroactively conduct a full *National Telephone* balancing analysis on appeal.

### A.    Requests for Section 7 Protected Information

For decades, this Court has maintained that the test for Section 8(a)(1) liability is whether employers' actions "tend to be coercive" when considered "within the totality of circumstances surrounding the occurrence at issue." *NLRB v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 459 (5th

Cir. 1983) (citation omitted).  And this Court has repeatedly rejected the Board's attempts to impose per se liability for an employer's words or actions, without considering the surrounding context.

In the interrogation context, for example, this Court has explained that "[q]uestioning of employees as to union activities is not illegal *per se*." *Id.* at 460; *see also Ctr. Prop. Mgmt. v. NLRB*, 807 F.2d 1264, 1270 (5th Cir. 1987) ("questioning an employee about union sympathies is not per se unlawful"). Indeed, this Court recently rejected the Board's suggestion that an employer commits an unfair labor practice whenever he makes "inquiries about wages or union sentiment," and recognized that the circumstances "[t]aken as a whole" in that case did "not support a finding of coercive interrogation." *Apple Inc. v. NLRB*, --- F.4th ----, 2025 WL 1862823, at *5-6 (5th Cir. July 7, 2025). Similarly, in threats cases, "[t]here are no magical phrases the mere incantation of which are coercive and therefore violate § 8(a)(1)." *Exxon Rsch. & Eng'g Co. v. NLRB*, 89 F.3d 228, 233 (5th Cir. 1996).

The same is true of requests for Section 7 protected information.  Even if requests for that information may sometimes be coercive, that does not eliminate the Board's burden to prove that Starbucks' requests would tend to

coerce when considered "within the totality of circumstances surrounding the occurrence at issue." *Brookwood Furniture*, 701 F.2d at 459.

This Court's decision in *Texas Industries, Inc. v. NLRB*, 336 F.2d 128 (5th Cir. 1964)—which the General Counsel and Workers United cite repeatedly, *e.g.*, NLRB Br. 19-22; Intervenor Br. 17-20—does not pave the way for per se liability for requesting employees' Board affidavits. There, this Court held that a company violated Section 8(a)(1) when (1) a personnel manager and a company attorney interviewed 147 employees in person and asked whether they "talked to an agent of the NLRB about [an unfair labor practice] case," whether they gave a "sworn statement," and what they told the Board, (2) the company asked employees for their statements to the Board, and (3) once the company received the witness statements, a company attorney "read each employee his statement, asked whether it was true, and questioned the employee about the incidents referred to therein." *Tex. Indus.*, 336 F.2d at 131. Given those circumstances, this Court found the employer's conduct coercive. *Id.* at 133.

While this Court explained why requests for employees' communications with the Board may often be coercive, it did not adopt a per se rule that employers who request such communications violate Section

8(a)(1)—let alone that employers that use the Board's discovery procedures to do so violate Section 8(a)(1).  It cannot be per se coercive for employers to request and receive witness affidavits because such affidavits must be produced when requested at Board hearings.  NLRB Br. 12.  This Court thus acknowledged that it was possible that "under some circumstances a showing could be made that an employer would be justified in obtaining copies of employees' statements."  336 F.2d at 134.  Those "circumstances [were] not presented" in that case.[5]  *Id.*

The General Counsel (at 19) and Workers United (at 23-24) point out that the D.C. Circuit has arguably embraced a per se rule that an employer's "mere request[s]" for employees' statements to Board investigators violates the NLRA.  *See Retail Clerks Int'l Ass'n v. NLRB*, 373 F.2d 655, 658 (D.C. Cir. 1967).  But *Retail Clerks*, like *Texas Industries*, involved employer conduct occurring outside the Board's discovery procedures.  *Id.* at 657-58.

---

[5] Since *Texas Industries*, this Court has clarified that although employer interrogation "presents an ever present danger of coercing employees in violation of their § 7 rights," this court considers eight factors to determine whether "certain interrogation tends to be coercive in the totality of the circumstances."  *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 416 (5th Cir. 1981) (citation omitted); *see NLRB v. Camco, Inc.*, 340 F.2d 803, 804 (5th Cir. 1965) (adopting the eight-factor test).

And, in any event, other courts have expressly rejected *Retail Clerks*'s holding. *E.g.*, *Robertshaw Controls Co. v. NLRB*, 483 F.2d 762, 769 (4th Cir. 1973) ("we cannot agree that the mere request for copies [of employees' pretrial statements] constitutes a Section 8(a)(1) violation"); *NLRB v. Martin A. Gleason, Inc.*, 534 F.2d 466, 480 n.8 (2d Cir. 1976) ("declin[ing] to follow the holding in *Retail Clerks*" for "the reasons set forth in *Robertshaw*").

Here, the Board never even considered whether Starbucks' subpoenas were coercive under the circumstances of *this* case. Instead, the Board held Starbucks liable simply because it found that Starbucks requested Section 7 protected information like witness affidavits, which it deemed "inherently coercive" and therefore "inherently unlawful."[6]   RE6.   No context or

---

[6] On appeal, the General Counsel claims that the "Board's approach of finding pre-hearing requests for employees' communications with Board personnel to be coercive *strikes an appropriate balance*" between "employee and employer interests." NLRB Br. 23 (emphasis added). That phrasing is confusing, because it suggests that the Board used a balancing test (like *National Telephone*'s) to address Starbucks' request for Section 7 protected information. But the Board found Starbucks liable for subpoenaing Section 7 protected information based on the "inherently coercive" nature of that request. RE6. It invoked *National Telephone*'s balancing test only for Starbucks' requests for information that may disclose employees' Section 7 conduct. RE7.

circumstances mattered.  According to the Board, the "harm is in the very request itself."[7]  RE6 (citation omitted).

The General Counsel cannot rehabilitate that erroneous conclusion on appeal.  The General Counsel (at 19-23) spills much ink explaining why employers do not need the Board's witness affidavits or communications with the Board "*before* a hearing" and thus why such requests generally may be coercive.  NLRB Br. 19; *see also, e.g.*, NLRB Br. 39 ("prehearing disclosure"). But Starbucks' subpoenas did not request production *before* the hearing; they merely instructed Cardenas and Hernandez to bring the requested documents *to the ALJ hearing*.  ROA.261, 276.  The Board below and the General Counsel on appeal ignore that fact.  The Board's refusal to engage with contextual facts is error.

The General Counsel (at 23) exaggerates when it claims that the Board *did* "consider[] the full factual context of the requests."  The Board dedicated two paragraphs to Starbucks' alleged request for Section 7 protected information.  In the first paragraph, the Board explained that it "has

---

[7] On appeal, the General Counsel defends the Board's conclusion that Starbucks' subpoenas "inherently" chilled employees by citing inapposite cases where employers gave no redaction instructions or circumvented the Board's procedures by using illegal interrogations, lawsuits, or FOIA requests to obtain documents.  NLRB Br. 14-16.

consistently found that employers act with illegal objective when serving subpoenas to current and former employees to obtain their confidential Board affidavits" because it "considers such demands to be inherently coercive and unlawful." RE6. In the second, the Board concluded that Starbucks requested Section 7 protected information, despite instructions in Starbucks' subpoenas excluding witness affidavits from the request. Neither paragraph addressed contextual factors, much less the "full factual context of the requests." *Contra* NLRB Br. 23.

The General Counsel suggests that the Board considered at least one "contextual detail": that Hernandez and Cardenas "attempted to keep their activity hidden" from Starbucks. NLRB Br. 24 (quoting RE7). But the General Counsel is quoting a *different* part of the Board's order, where the Board considered whether Starbucks' requests for "information about employees' Section 7 conduct" were coercive. *See* RE7. The Board never factored that detail into its analysis of whether Starbucks' requests for Section 7 protected information were coercive.[8]

---

[8] Workers United (at 33-34) references several factual circumstances that, it says, added to the coercive effect of the subpoenas. But the Board referenced none of those circumstances.

The General Counsel (at 24-25) notes that the Board's order mentioned that Starbucks subpoenaed "items that would be in the General Counsel's possession" but "did not seek the General Counsel's permission [under 29 C.F.R. § 102.118(a)] before requesting [those] items."  That regulation requires the Board's permission to subpoena *the Board* for *its* files, not to request documents directly from employees.  If that regulation was somehow part of the "full factual context" that the Board considered, it never explained why that detail mattered or how it "added to the coercion," as the General Counsel now claims.  NLRB Br. 24 (cleaned up).

It was the *Board's* burden to prove that Starbucks' requests were coercive within the "totality of circumstances," and it failed even to engage with that question below.  Vacatur is appropriate whenever the Board applies the wrong standard or ignores relevant context.  *See, e.g.*, *Starbucks Corp. v. NLRB*, 140 F.4th 971, 976 (8th Cir. 2025).  Starbucks does not have to "make the case that the Board overlooked any relevant details regarding the subpoena requests."  *Contra* Intervenor Br. 26.

Even so, the Board was wrong to conclude that Starbucks' requests for "Section 7 protected information" were automatically coercive and should have considered several circumstances.  *See* Starbucks Br. 55-56.  Starbucks, under

the watchful supervision of the Board's ALJ who would rule on any petition to revoke and in compliance with the Board's discovery rules, merely issued subpoenas requesting production of certain documents at the ALJ hearing. ROA.261, 276. Starbucks gave limiting instructions to redact information that would expose previously unrevealed union sentiments and offered a protective order or *in camera* ALJ inspection. ROA.261-64, 276-79, 411. Starbucks did not attempt to obtain the documents outside Board processes. Although the General Counsel (at 27-29) quibbles with whether these contextual facts would have shifted the Board's analysis, the Board's failure to consider these facts was error.

Finally, the Board lacked substantial evidence to support its finding that Starbucks even requested Section 7 protected information at all. *See* Starbucks Br. 51-53. The instructions in Starbucks' subpoenas clarified in bold lettering that Starbucks' requests excluded confidential Board witness questionnaires, witness affidavits, or investigatory statements. *See* ROA.261-64, 276-79.

The General Counsel (at 25-26) and Workers United (at 21-22) both argue that the subpoena instructions were "confusing." But Starbucks' instructions and requests were clear: Starbucks was not requesting any

documents that the Board's "Case handling manual" described as "confidential," or statements for which the employee had been given "Assurance of Confidentiality." *See* ROA.261-64, 276-79. Starbucks was requesting any statements for which the employee had no claim of confidentiality. The subpoenas' instructions expressly excluded Section 7 protected documents.

### B.    Requests for Information About Employees' Section 7 Conduct

The Board's determination that the requests for information about employees' Section 7 conduct were coercive under *National Telephone* was just as flawed. RE7. The *National Telephone* test has its own problems. *See supra* pp. 3-19. But, even if the test were permissible, the Board arbitrarily and capriciously failed to apply *National Telephone* on its terms: the Board identified only Hernandez's and Cardenas's interests in keeping their union activity confidential, while neglecting to identify or consider the weight of Starbucks' interests in the subpoenaed information. Starbucks Br. 45-49. With the employer side of the scale left empty, it was inevitable that the employees' interests prevailed.

The General Counsel's insistence (at 32) that the Board did "examine[] the relevance of the requests to [Starbucks'] defense" again mischaracterizes

the Board's order. *See also* Intervenor Br. 34-35. The Board's order dedicated two paragraphs to the claim that Starbucks violated Section 8(a)(1) by requesting information about employees' Section 7 conduct. RE7. The first addressed *National Telephone*'s first prong, by identifying Hernandez's and Cardenas's interest in keeping their union activities confidential.[9] RE6. But the second paragraph did not discuss Starbucks' counter-interest in the subpoenaed information. RE6. Instead, the Board used that paragraph to officially adopt *National Telephone* as its test for liability, and then summarily concluded that Starbucks was liable because a "balancing of interests yields the same result in this case" as in *National Telephone*: the "employees' rights ... outweighed the employer's need." RE7.

Only *after* the Board completed its conclusory "balancing of interests" did the Board engage with Starbucks' "defense" that the Board violated Starbucks' due process rights. RE7-8. The Board held that Starbucks had no due process right to issue subpoenas that were "overly broad" and where "the requested documents were not reasonably relevant to the proceeding." RE8.

---

[9] The Board did not, however, consider whether "at least some of the document requests did not implicate any employee's confidentiality interests," as it should have. *See Ozark Auto. Distribs., Inc. v. NLRB*, 779 F.3d 576, 581 (D.C. Cir. 2015); Starbucks Br. 46.

The Board thus considered Starbucks' need for the requested information *only* while deciding whether the Board satisfied the minimum due process requirements.  RE7-8.  That inquiry is distinct from whether Starbucks' need for *any* of the subpoenaed information outweighed Hernandez's and Cardenas's confidentiality interests. *Contra* NLRB Br. 32; Intervenor Br. 34-35.

The General Counsel (at 32-34) now tries to conduct the balancing analysis that the Board failed to complete below.  But again, the General Counsel's analysis on appeal cannot substitute for the Board's failure to explain its liability determination. *See Indianapolis Mack,* 802 F.2d at 285. The Board erred by failing to apply its own liability test. *See Apache Corp. v. FERC*, 627 F.3d 1220, 1223 (D.C. Cir. 2010) (Kavanaugh, J.).

Finally, although the Board purported to apply *National Telephone* to assess whether Starbucks violated Section 8(a)(1) by requesting information about employees' Section 7 conduct, the Board also cited several cases to suggest that an employer's mere requests for information about employees' Section 7 conduct would chill "reasonable employees' participation in Section 7 activity."  RE7.  As Starbucks (at 56-60) explained in its opening brief, those cases support only the proposition that *disclosure* of confidential information

will chill union activity.  The mere request for the information is not inherently coercive.

The General Counsel (at 34) responds that there is no difference in coerciveness between "request[ing]" and "disclos[ing]" Section 7 activity.  But employees who know that their employer will read their union communications may stay silent, whereas employees who receive subpoenas that are subject to revocation by an ALJ may feel no coercion at all.  Although the General Counsel (at 34) notes that employers have been held liable in the surveillance context for even unsuccessful attempts to collect information about employees' Section 7 activities, surveillance cases are different.  When an employer tries to surveil his employees—even unsuccessfully—employees will assume that their communications are being disclosed.  They have no control over whether the employer reads their communications or observes their activities, which distinguishes surveillance from requests for information through the Board's subpoena process.  The Board's suggestion that Starbucks chilled Hernandez's and Cardenas's Section 7 activity merely by requesting information about their conduct through the subpoena process is thus unsupported.

## CONCLUSION

Starbucks' petition for review should be granted, and the Board's cross-application for enforcement should be denied.

Dated: July 29, 2025                    Respectfully submitted,

JEFFREY S. HILLER                       /s/ Lisa S. Blatt
LITTLER MENDELSON, P.C.                 LISA S. BLATT
  41 S. High Street, Ste. 3250          AMY MASON SAHARIA
  Columbus, OH 43215                   CLAIRE R. CAHILL
                                        WILLIAMS & CONNOLLY LLP
JONATHAN O. LEVINE                        680 Maine Avenue, S.W.
LITTLER MENDELSON, P.C.                   Washington, DC 20024
  1111 E. Kilbourn Avenue, Ste. 1000     (202) 434-5000
  Milwaukee, WI 53202                    lblatt@wc.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the Fifth Circuit by using the appellate NextGen system. I certify that all participants in the case are registered NextGen users and that service will be accomplished by the appellate NextGen system.

Dated: July 29, 2025

/s/ *Lisa S. Blatt*

LISA S. BLATT

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, that the attached Reply Brief for Petitioner/Cross-Respondent Starbucks Corporation contains 6,497 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point CenturyExpd BT.

Dated:  July 29, 2025

/s/ *Lisa S. Blatt*
LISA S. BLATT